# Kennedy *v.* The State.

## *Murder.*

(Decided April 17, 1913. Rehearing denied May 8, 1913.
62 South. 49.)

1. *Homicide; Evidence; Jury Question.*—On the evidence in the case it was a question for the jury whether a person voluntarily present at the time and place of the difficulty which resulted in the death of the deceased was a guilty participant in the killing.

2. *Same; Evidence.*—Where defendant knew of the ill feeling between deceased and a person jointly indicted with defendant for the killing, and knew that such third person was armed and ready for a difficulty at the time of the killing, any error in admitting evidence that such third person, just before starting to the scene of the difficulty, handed to a witness a bullet box with the picture of a bullet on it, was not prejudicial.

3. *Same; Res Gestae.*—Where deceased and a third person, jointly indicted with defendant, had a dispute about the use of a road by such third person over the lands of deceased, the fact that deceased was when killed, in possession of the land over which the road ran, at the place of the killing, was admissible as a part of the res gestæ, although it did not show that defendant and such third person were unlawfully thereat.

4. *Same; Other Offenses.*—Where the murder of two persons formed a part of a single transaction, and in fact were inseparable, each was of the res gestæ of the other, and every fact illustrative of the one was competent as illustrative of the other.

5. *Same.*—It was competent to show a statement made by ·defendant, just after the killing, that deceased started to run, and that he started to save deceased, since it was not prejudicial to defendant, but illustrative of his attitude and intention during the affray resulting in decedent's death.

6. *Same.*—Where defendant knew of the ill feeling between deceased and another person indicted with him, over the use of a way by such third person over lands belonging to deceased, and knew that such third person was armed when starting to the scene of the fatal difficluty on deceased's premises, evidence that such third person handed witness a bullet box with a picture of a bullet on it, was not only not prejudicial, but was admissible independently.

7. *Same; Acts of Conspirator.*—Where there is evidence of a conspiracy between accused and a third person to kill deceased, every act of such third person in prosecution of the common design is admissible against defendant.

8. *Trial; Admission of Evidence; Objections.*—The appellate court will not review the admissions of evidence where the record shows no objection to the question or motion to exclude the answer.

9. *Evidence; Marks and Identification.*—A label placed on a box in the ordinary way to indicate its nature and contents is competent evidence thereof. at least as against one having the box in his possession, or handing it to another, and the inference of contents corresponding thereto is a matter for the jury.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

William Kennedy was convicted of murder in the first degree, and he appeals. Affirmed.

Shelton Kennedy and his son Sarge were killed in the same affray, and defendant was jointly indicted with John Pearce and others for the murder of Shelton Kennedy, who was the defendant's son. The undisputed evidence is that there had been for some time bad blood between Pearce and Shelton Kennedy, growing out of a dispute as to the use by Pearce, and his lumber wagons, of a road running through a portion of ·the lands belonging to deceased. Just before the affray Pearce had secured a temporary writ of injunction forbidding deceased to interfere with Pearce's use of the road. On the morning of the killing Pearce started four or five lumber wagons from his mill along the road towards the contested section. According to the evidence of the

State Pearce was armed with a Winchester rifle and a pistol, and three other members of his party carried shotguns or army guns. Just before starting Pearce made inquiries of persons who had come from up the road whether Shelton Kennedy and his boys were there, and what they said. Upon being informed that they said the sawmill men could not pass through, Pearce remarked that he would see about that in a few minutes. Defendant left the sawmill about five minutes in advance of the wagons, and when he reached the obstructed part of the road, he encountered Shelton Kennedy and his son Sarge, who forbade the removal of the obstructions, and he was engaged in a dispute with them when John Pearce and his party came up with the lumber wagons. After the latter arrived the dispute was carried on chiefly by defendant and Shelton Kennedy, John Pearce and one or more others of his party standing near by with weapons in their hands. Finally, under the orders of Pearce, an ax was produced and passed to defendant, with which he proceeded to cut away the wires of the obstructing fence. Immediately thereafter the firing began, and the evidence is conflicting as to who began it. Shelton Kennedy and his son were shot to death, and none of the Pearce party were injured. Defendant had no firearm, and took no physical part in the shooting, nor does it appear that he was shot at. His own testimony, however, shows that he knew of the hostility existing between John Pearce and Shelton Kennedy, and of the dispute between them as to the use of the road; that he knew that Pearce had secured an injunction for keeping the road open, and that he intended to clear it himself; that he saw the wagons approaching the scene of altercation, saw the Pearces with their guns, and knew they were intending to open the road; and that his son told him before the

others arrived that he would shoot anybody that travel-
ed that road. When defendant left the sawmill that
morning he saw them loading the wagons, and knew
they would come along the road just behind him, and
he had also talked with Pearce about the road that
morning. Witness for the state testified that Shelton
Kennedy was in possession of the field through which
the road ran at that point, and of the ground where the
dead bodies were lying. Defendant objected to the
several questions calling for this evidence on the ground
of irrelevancy, and the objections were overruled. The
state's witness Dyer was asked by the solicitor, "Did
you get anything from Dr. (John) Pearce that morn-
ing?" and, upon his replying that Pearce gave him a
bullet box about $2x1\frac{1}{2}$ inches in size, he was asked
further, "What did the box have on the outside of it?"
to which he replied, "A picture of a bullet." Objection
was made to both questions on the ground of irrele-
vancy, but there was no motion to exclude the answers.
Dr. Anderson, a state's witness, was allowed, against
defendant's objection for irrelevancy, to testify that the
bullets in Sarge Kennedy's body "seemed to come
straight from the back and to go straight in." Other
rulings are sufficiently stated in the opinion.

KNOX, ACKER, DIXON & STERNE, TATE & ARNOLD, and
HUGH WALKER, for appellant. Declarations of a con-
spirator or confessions of a conspirator in the absence
of a co-conspirator, are not admissible as against the co-
conspirator, unless a conspiracy has been shown or suffi-
cient facts testified to from which it can be inferred.—
*Collins v. State,* 138 Ala. 61; *Lankford v. State,* 130
Ala. 76. Mere knowledge on the part of defendant that
Pearce and his employes would traverse the road, or an
agreement on his part to assist them to lawfully trav-

erse it would not render him a conspirator.—8 Cyc. 621. Before evidence can be said to be harmless, the court must be satisfied that the verdict of the jury would not have been different had the evidence been excluded.— *Dennis v. State,* 118 Ala. 72; *Pope v. State,* 168 Ala. 44. Counsel discuss the other evidence in the light of these authorities, but without further citations of authority, and insist that there was error to injury. The firmly fixed rule is in criminal cases that error is presumed prejudicial unless it affirmatively appears that no injury results.—*Terry v. State,* 118 Ala. 86.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

SOMERVILLE, J.—Defendant was voluntarily present at the time and place of the fatal affray in which his son and grandson were shot to death by John Pearce and others. He knew of the quarrel between Pearce and deceased, and knew of Pearce's purpose with force and arms to carry his wagons over the disputed section of the road, and knew also of his son's purpose to resist that aggression to the extent of taking life if need be. Under these ominous conditions defendant remained on the ground and continued a dispute previously begun, and actively aided the Pearce party in the violent removal of the obstruction and in the forcible passage of the disputed roadway. Whether he was a guilty participant in the killing of his son and grandson, which then and there followed, was, under the circumstances shown, very clearly a question of fact for the jury, although reasonable doubts of his felonious intentions are strongly suggested by some phases of the evidence. The trial court did not err in refusing the affirmative instructions requested by defendant.—*Amos v. State,* 83 Ala. 1, 3 South. 749, 3 Am. St. Rep. 682.

The fact that John Pearce handed to the witness a small bullet box with a picture of a bullet on it, just before starting to the scene of the affray, even if irrelevant so far as this defendant is concerned, was entirely harmless and without prejudice, since it added nothing of importance to Pearce's otherwise plainly evident intention to use firearms contingently in forcing a passage over the road. The material fact was that he was armed and ready for a difficulty, and this was known to defendant.

The fact that deceased, Shelton Kennedy, was, when killed, in possession of the field through which the road ran at the place of the killing was a circumstance properly allowed to go to the jury as a part of the res gestæ. —*Parsons v. State,* 179 Ala. 231, 60 South. 864. It of course did not of itself tend to show that defendant or his companions were unlawful aggressors, but it was competent in explanation of the presence there of the two deceased men, and of their animus during the affray.

So, also, although defendant was not on trial for the killing of Sarge Kennedy, the two killings were parts of a single transaction, and were in fact inseparable. Each was of the res gestæ of the other, and every fact and incident illustrative of the one was competent also in illustration of the other.—*Smith v. State,* 88 Ala. 73, 7 South. 52. Hence the fact that the bullets in Sarge Kennedy's body entered straight from his back was properly admitted in evidence as a part of the whole transaction.

Defendant's statement, made just after the killing, that "the boy started to run, and I started to save the boy," was properly admitted for whatever it was worth in illustration of defendant's attitude and intentions

during the affray. It was probably beneficial to him, and cannot be regarded as a ground of reversal.

The several charges refused to defendant are too palpably bad to justify discussion.

We find no reversible error in the record, and the judgment will be affirmed.

Affirmed. All the Justices concur, except DOWDELL, C. J., not sitting.

## ON REHEARING.

SOMERVILLE, J.—Counsel for appellant complain of our conclusion of fact that "defendant knew of Pearce's purpose with force and arms to carry his wagons over the disputed section of the road." On cross-examination defendant said: "Pearce said he had an injunction, and that he would open the road. * * * I knew the wagons would come on behind me. When I saw the wagons coming along up there preceded by John Pearce and Cross Pearce with guns, and Eaton and Fowler along, and the little Pearce boys driving the wagons, *I knew that they were expecting to open the road.*" He further stated that his son had told him, before the Pearces arrived, "I will shoot anybody that travels that road." In the face of these specific admissions, defendant's knowledge of an impending forcible passage of the road cannot be regarded as within the pale of controversy.

Counsel erroneously assume that we hold as inadmissible the fact that Pearce handed a bullet box to one of his drivers, Lean Dyer, just before starting off with the wagons, and also the fact that the box had the picture of a bullet on it. We think that both facts were, in connection with all the other evidence, very clearly relevant and admissible, equally so with the carrying of a rifle, though certainly not more significant.

There being evidence from which the jury might have inferred the existence of a conspiracy between defendant Pearce and others, every act of Pearce's in prosecution of the common design was of course admissible against defendant also. The questions which elicited these facts had no bearing upon the theory of a distribution of ammunition by Pearce to his codefendants, and tended at most to show Pearce's possession of ammunition at the time.

The record shows no objection by defendant to the *answers,* and no motion to exclude them, and hence we could not in any case consider the rulings complained of in the aspect presented on this application.

The suggestion that the fact that the box handed by Pearce to the witness bore upon its face the picture of a bullet was not competent evidence to indicate the contents of the box, and was in fact the unsworn statement of an unknown witness, and therefore mere hearsay, is without merit. If we treat the inscription as the declaration of a third person, the rule of exclusion fails, for the declaration is in effect made directly to every person who receives the box into his possession; and, when he hands it to another, he in effect repeats the declaration as his own. The correct theory of the matter, however, is that inscriptions designedly placed on bottles, boxes, or other packages, in the ordinary way, for the obvious purpose of indicating their nature or contents, may in general be regarded as competent evidence thereof, at least against those persons who have such objects in their possession, or who dispense them to others. Their external indicia are some evidence, stronger or weaker according to accompanying circumstances, of their internal contents. If a defendant is accused of selling alcoholic liquor contrary to law, it cannot be rationally urged that whisky labels

on the bottles of liquor dispensed by him would not be some evidence of the nature of the liquor inside; or, if a defendant is accused of committing murder by poison, that an arsenic label on a bottle in his possession is not some evidence that the bottle had contained arsenic while in his possession. In such cases the inference of a content corresponding to the label is clearly one for the jury to draw or not draw, as a conclusion of fact, under all the circumstances of the case. So in this case the bullet label on this *small heavy box* might legitimately aid the jury to the conclusion, not only that it was a cartridge box, but also that it then had cartridges in it, in view of the conditions under which it was exhibited by Pearce.

The application for rehearing is overruled. All concur, except DOWDELL, C. J., not sitting.