BISHOP, J.
 

 The defendant sold a pint of whiskey, and as he had no license, he stands convicted on the charge that, by the sale, he had exercised a privilege and performed an
 
 *995
 
 act which a person holding a license might exercise and perform under the authority of his license. In support of Ms appeal from the judgment of conviction the defendant argues that as the sale took place at an hour when a licensee could not legally make a sale, it follows that he had not done an act which a holder of a license might perform. He further contends that it was not proved that the bottle which he sold contained whiskey, the main evidence on the subject being its label, which reads: “Old Crow WMskey, 100 Proof.” Upon examination we found each of these points to be without merit.
 

 Defendant’s first contention is-made possible by the backhanded manner in which the Legislature has made it a misdemeanor to sell whiskey without a license. The offense is created in section 3 of the Alcoholic Beverage Control Act (Deering’s Gen. Laws, Act 3796; Stats. 1935, p. 1123, as amended) by these words: “No person shall exercise the privilege or perform any act or acts wMch a licensee under tMs act may exercise or perform under the authority of a license issued under tMs act unless such person is authorized to do so by a license duly issued pursuant to the provisions of this act. Any person violating any provision of this section shall be guilty of a misdemeanor. ...”
 

 To complete the background necessary to an understanding of defendant’s first position, we note that not only in fact but by definition (section 2(d) of the act referred to) “whiskey” is included among the “distilled spirits.” Some twenty-five different types of licenses are listed in section 5 of the act, while in section 6 are detailed the “rights and privileges” wMch the several licenses “shall authorize the person to whom issued to exercise.” We pay particular attention to two statements found in section 6: “An off-sale general license . . . authorizes the sale, to consumers only and not for resale, of distilled spirits in packages of not more than one gallon and . . . not less than one-half pint for consumption off the premises where sold.” (§ 6(h).) “Any on-sale license authorizes the sale of the alcoholic beverage specified in the license for consumption on the premises where sold. . . . An on-sale general license authorizes the purchase and possession of distilled spirits in packages of not more than one gallon capacity and of not less than one-half pint capacity.”
 

 Later in the act, in section 59.6, we find that it is made a
 
 *996
 
 misdemeanor for an off-sale licensee to sell any alcoholic beverage after 8 o’clock p. m. or before 10 o’clock a. m. of any day, or for an on-sale licensee to sell his wares after midnight and before 8 o’clock in the morning.
 

 The sale which got the defendant into trouble occurred, all witnesses agreed, about 2 o’clock a. m. One of the witnesses had asked the defendant if he could sell him a bottle of good whiskey. The defendant, who was driving a cab, indicated that he could comply with the request. He drove to a place where two other bottles were later discovered, went to the rear of the premises, and returned with a pint bottle. He then droye a short distance before he stopped at a street light, stated the price was $7.00, and in exchange for marked bills gave the witness a pint bottle, labelled 11 Old Crow Whiskey— 100 Proof.”
 

 Defendant’s first argument, which is that a sale of whiskey at 2 o ’clock in the morning is neither performing an act nor exercising a privilege which a licensee might legally perform or exercise, has just enough foundation in the literal structure of the charge, and in the wording of section 3, upon which the charge was based, to make it plausible. However, to place the interpretation upon section 3 contended for by the defendant would result in permitting an unlicensed person to sell intoxicating liquor with impunity during the hours a licensed person is expressly forbidden to do so. Such an interpretation would be out of harmony with the injunction contained in the first section of the act, that “all provisions of this act shall be liberally construed for the accomplishments of these purposes,” one of the' purposes referred to having been earlier declared in the section to be “to eliminate .the evils of unlicensed . . . selling ... of alcoholic beverages.” In addition to the rule of interpretation expressed in the act itself, we know that “Once the intention of the legislature is ascertained it will be given effect even though it may not be consistent with the strict letter of the statute (citing cases). In construing a statute it must be remembered that no law is to be construed in such a manner as to result in a palpable absurdity.”
 
 (People
 
 v.
 
 Black
 
 (1941), 45 Cal.App.2d 87, 94 [113 P.2d 746].)
 

 The words employed by the Legislature permit of an interpretation which avoids the absurd result of permitting an unlicensed person to sell liquor during the periods when li
 
 *997
 
 censed places must be closed. The key to the meaning of section 3 is found in its use of the terms “under the authority of a license” and “authorized to do so by a license.” As we have already noted, those things which a license authorizes a person to do, and those things which may be done under the authority of a license, are set forth in section 6 of the act. While it is true that section 59.6 prohibits a licensee from exercising his privileges during certain hours, and another section of the act (§61) makes it a misdemeanor for anyone to sell an alcoholic beverage to a child, and the Health and Safety Code makes it unlawful to sell liquor if it is misbranded (§§ 26450, 26490, 26510), none of these various interdictions read as amendments to the provisions of section 6 which state what rights and privileges are authorized by the various licenses given. That which an on-sale license authorizes is the sale of the alcoholic beverage specified in the licenses. It is this authority that section 3 has in mind, and one who, having no license, sells whiskey, violates section 3, even though the sale is in a manner, or at times, or to a person, which could not lawfully be made by the holder of a license. The “authority” involved is that set forth in section 6, not the restricted right to operate left when all statutes are considered. This construction of section 3 makes it harmonious with the declaration in section 22 of article XX of the California Constitution (which is the controlling authority under which the entire act in question operates), that “It shall be unlawful for any person other than a licensee of said board to manufacture, import or sell intoxicating liquors in the State.”
 

 Defendant’s second argument is that there was no competent proof that the liquid in the pint bottle which he sold was either whiskey or any other intoxicating beverage. As already indicated, the evidence at this point is not extensive. The defendant was asked if he would sell some good whiskey, and he produced a bottle bearing the label “Old Crow Whiskey, 100 Proof, ’ ’ upon which were some unbroken United States Government revenue stamps. The bottle, for some reason, was never opened and sampled, the testimony of the several witnesses to the effect that it contained whiskey being admittedly based upon the label and stamps that it bore and, doubtless, upon the further fact that its contents did not look unlike whiskey. There was no evidence suggesting that the defendant had sold some other liquid as the whiskey bargained for.
 

 
 *998
 
 It was not error to admit the bottle into evidence, nor was the proof lacking that it was whiskey which the defendant sold. As stated in
 
 Fowler
 
 v.
 
 State
 
 (1945),-Okla.- [157 P. 2d 222, 223] : “As to whether the liquid seized . . . was whiskey as alleged in the information, the proof could be made by circumstantial as well as by direct evidence. The fact that the liquid was in a pint bottle with an unbroken Government seal, that it was red in color and had the appearance of whiskey and was labelled ‘whiskey’ was a sufficient showing that the liquid transported by the defendant was whiskey,, and in the absence of any proof offered on behalf of defendant, was sufficient to sustain the conviction.” In the earlier case of
 
 Munn
 
 v.
 
 State
 
 (1911), 5 Okla.Cr. 245 [114 P. 272], the court came to the same conclusion for much the same reasons.
 

 In
 
 State
 
 v.
 
 Wright
 
 (1895), 68 N.H. 351 [44 A. 519], the presence of United States revenue stamps on some kegs was held to lend support to the conclusion that the kegs contained malt liquor. In
 
 Tompkins
 
 v.
 
 State
 
 (1907), 2 Ga.App. 639 [58 S.E. 1111], it was stated that “The jury may infer . . . that a liquid, though not imbibed, is whiskey where the purchaser plainly asks for whiskey, and the seller furnishes it in compliance with his request.” This case was followed approvingly, where peach brandy was in question, in
 
 Howard
 
 v.
 
 State
 
 (1909), 7 Ga.App. 61 [65 S.E. 1076, 1077]. To the same effect is
 
 Lewinsohn
 
 v.
 
 United States
 
 (1922), 278 F. 421, 426. See, also, 33 C. J. 774, note 96.
 

 In several eases the presence of labels was held sufficient, in the absence of evidence to the contrary, to determine the character of the contents. In
 
 Herring
 
 v.
 
 State
 
 (1914), 11 Ala.App. 202 [65 So. 707], we find it stated that “The fact that packages delivered by the express company to the defendant were billed and marked ‘whiskey’ was some evidence that they contained whiskey. ’ ’ This conclusion was based in part on the authority, of
 
 Kennedy
 
 v.
 
 State
 
 (1913), 182 Ala. 10 [62 So. 49], where a conviction of murder was affirmed, and, in considering the effect of a label on a box received in evidence, the Alabama Supreme Court had remarked: “If a defendant is accused of selling alcoholic liquor contrary to law, it cannot be rationally urged that whiskey labels on the bottles of liquor dispensed by him would not be some evidence of the nature of the liquor inside. ’ ’
 

 
 *999
 
 We find the opinions in
 
 Jackson
 
 v.
 
 State
 
 (1914), 11 Ala.App. 193 [65 So. 708], and
 
 Gilliland
 
 v.
 
 State
 
 (1919), 15 Okla.Cr. 635 [179 P. 786], particularly persuasive because they are founded upon a principle which we deem applicable to this case. In each of these cases, the fact was stressed that by statute labels were required, and were found, upon the bottles which were sold. In this state, too, it is, as we have seen, unlawful to sell liquor in a container which is falsely labeled. (Health & Saf. Code §§ 26450, 26490, 26510.) It is presumed both that a person is innocent of crime (subd. 1, § 1963, Code Civ. Proc.), and that the law has been obeyed. (Subd. 33, id.) These presumptions are evidence
 
 (People
 
 v.
 
 Le Doux
 
 (1909), 155 Cal. 535, 553 [102 P. 517, 524]) applicable to criminal actions (Pen. Code § 1102;
 
 People
 
 v.
 
 Le Doux,
 
 supra;
 
 People
 
 v.
 
 Cockrill
 
 (1923), 62 Cal.App. 22, 38 [216 P. 78,
 
 85]);
 
 they are not overcome by the presumption of innocence of the crime charged against the defendant
 
 People
 
 v.
 
 Agnew
 
 (1940), 16 Cal.2d 655, 663 [107 P.2d 601, 604]. See, also,
 
 Dunlop
 
 v.
 
 United States
 
 (1897), 165 U.S. 486 [17 S.Ct. 375, 41 L.Ed. 799, 804].) It was to be presumed, therefore, that when the defendant sold a bottle bearing the label “Old Crow Whiskey, 100 Proof,” that that is just what it was.
 

 Other matters suggested in the defendant’s argument have been considered, but we do not deem that they merit mention.
 

 The judgment is affirmed.
 

 Shaw, J., and Kincaid, J., concurred.