[Civ. No. 9313.   Third Dist.   Sept. 11, 1957.]

ALBERT OXMAN, Appellant, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL etc., et al., Respondents.

Pierce & Brown and Joseph C. Lovelle for Appellant.

Edmund G. Brown, Attorney General, E. G. Funke and William T. Chidlaw, Deputy Attorneys General, for Respondents.

SCHOTTKY, J.—Appellant, who is the holder of an on-sale general liquor license, and operates a public restaurant and bar in Sacramento, commonly known as the Clayton Club, was charged with violating sections 25657, subdivision (b) and 24200.5, subdivision (b), of the Alcoholic Beverage Control Act, sections 303 and 303a of the Penal Code, and rule 143, chapter I, title 4, of the California Administrative Code. He was found guilty of Counts III, IV, V and VII. Count VI was dismissed, and the hearing officer found that Counts I and II were not proved. As to Counts III, IV and V, his liquor license was suspended indefinitely, and as to Count VII, it was revoked. The decision of the department was upheld by the Appeals Board, and appellant filed in the superior court a petition for a writ of mandate commanding the department to vacate its order. The court denied the petition and this appeal is from the judgment denying the writ.

The gist of the charges against appellant licensee was that he employed and permitted female entertainers to solicit and accept alcoholic beverages from patrons of the premises.

Count III charged that appellant, on or about February 25, 1955, "did permit one Benita Francis, a female employee, to solicit in and upon the licensed premises, patrons and customers of, and visitors in, said premises to purchase alcoholic beverages intended for her consumption and use, and in that connection she did then and there solicit and encourage Liquor Control Officer, Louis M. Cardinale, to purchase alcoholic beverages for her consumption and use."

Count IV charged that appellant, on or about February 26, 1955, "did permit one Benita Francis, a female employee, to solicit in and upon the licensed premises, patrons and customers of, and visitors in, said premises to purchase alcoholic beverages intended for her consumption and use, and in that connection she did then and there solicit and encourage Liquor Control Officers, Louis M. Cardinale and Jack L.

Freschauer, to purchase alcoholic beverages for her consumption and use.''

Count V charged that appellant ''did employ upon said premises the persons whose names are alleged in the schedule hereinafter set forth, for the purpose of procuring or encouraging the purchase or sale of alcoholic beverages.

| ''Date | Name of Person |
|---|---|
| May 26, 1955 | Sherry Starr |
| May 26, 1955 to July 9, 1955 Incl. | Linda Joyce'' |

Count VII charged that appellant, on or about May 26, 1955, through July 9, 1955, inclusive, ''did employ and permit one Linda Joyce to solicit or encourage patrons to buy her drinks in the licensed premises under a scheme or conspiracy under which said Linda Joyce was to receive a commission, percentage or salary by such scheme, and in that connection, and pursuant to said scheme or conspiracy, said Linda Joyce did, on or about the aforesaid dates solicit or encourage unknown patrons to purchase alcoholic beverages for her consumption and use.''

The hearing officer found that the charges contained in Counts III and IV were true and that the licensee had violated rule 143 in relation to these counts. The hearing officer further found that the charges contained in Count V, as amended by the department at the hearing, were true and that such constituted a violation of Business and Professions Code, section 25657, subdivision (b) and Penal Code, section 303, by the licensee. In connection with this same count, the hearing officer found that the licensee permitted a violation of section 303a of the Penal Code. In regard to Count VII of the accusation, the hearing officer found that from the period May 27, 1955, through July 9, 1955, the licensee employed and permitted Linda Joyce to solicit or encourage patrons to buy her drinks under a scheme or conspiracy by which she was to receive a commission, percentage or salary and that she did solicit or encourage a number of patrons to purchase alcoholic beverages for her consumption and use. He further found that said Linda Joyce did not solicit on the first night of her employment and also that she did not solicit any patrons to buy her the first drink but she did solicit subsequent drinks from patrons. The hearing officer found that the licensee had violated section 24200.5, subdivision (b), of the Alcoholic Beverage Control Act and section 303 of the Penal Code. The hearing officer further made a finding that

while the contracts of the entertainers purported to make them independent contractors, "they were, nevertheless, subject to the control of the respondent as to their acts and behavior upon the licensed premises in the same manner as persons occupying the status of 'employees,' particularly as to duties and obligations of the respondent in the conduct of the licensed premises under the provisions of the Alcoholic Beverage Control Act and related rules and laws." These findings were adopted by the department and it was ordered that appellant's license be suspended indefinitely for each of Counts III, IV and V and revoked for the charges found to be true under Count VII.

Appellant has filed a lengthy brief in which he argues vigorously that there is no substantial evidence to support the decision of the respondent department and the judgment of the court. ■ Before discussing appellant's contention we think it is well to bear in mind the scope of review of a decision of the respondent department, and we quote what this court said in *Marcucci* v. *Board of Equalization*, 138 Cal.App.2d 605, at 608 [292 P.2d 264]:

"The respondent board with respect to its functions in controlling and regulating the sale and use of intoxicating beverages is a constitutional agency. (Cal. Const., art. XX, § 22, prior to its amendment in 1954.) The scope of review of its decisions is, therefore, limited to determining whether or not there is substantial support therefor to be found in the record, and both the superior court in mandate proceedings brought before it and this court upon appeal are without authority to reweigh the evidence. (*Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131-132 [173 P.2d 545]; *Moore* v. *State Board of Equalization*, 76 Cal.App.2d 758, 762-763 [174 P.2d 323]. See also *Boren* v. *State Personnel Board*, 37 Cal. 2d 634 [234 P.2d 981].) ■ In determining whether or not there is substantial evidence in support of the administrative decision, conflicts in the evidence must be resolved in favor of that decision and all legitimate and reasonable inferences must be indulged in its support. (*Nelson* v. *Department of Corrections*, 110 Cal.App.2d 331, 337-338 [242 P.2d 906].) ■ In *Thompson* v. *City of Long Beach*, 41 Cal.2d 235, 239-240 [259 P.2d 649], the Supreme Court said in review of a like administrative board's decisions:

" 'Appellant was not entitled to a trial de novo in the superior court but only to a review of the full proceedings before the local board acting in a quasi-judicial body em-

powered "to make final adjudications of fact in connection with matters properly submitted to it." . . . Upon such review the "court does not have a right to judge of the intrinsic value of evidence nor to weigh it" but its "power . . . is confined to determining whether there was substantial evidence before the board to support its findings." ' " " (See also Bus. & Prof. Code, § 23084.)

The evidence relied upon by respondent to support the judgment may be summarized as follows:

Linda Joyce testified that she was a former female entertainer at the Clayton Club and worked there from May 26 to July 9, 1955. She further stated that she had been interviewed by appellant Oxman in connection with obtaining a job in his premises. She was told she would receive $85 a week but was informed the next afternoon that she would be paid only $70. The licensee told her that they served drinks there and that most of the girls drank champagne cocktails. She further testified that he told her there was a commission of 25 cents a drink, $2.50 commission for a small bottle of champagne and $5.00 for a large one. She stated that she appeared in the show three or four times an evening for from 15 to 20 minutes at a time and that in any given evening she would entertain for approximately one hour. She testified that she came to work at approximately 8:30 in the evening and left at a little after 2 in the morning, after the club closed. She said that after an act was finished she would go back stage, get dressed, and come back to the bar, that she sat with customers at the tables or at the bar and that she drank champagne cocktails at the tables because that was the "drink of the house." She stated that although she did not solicit the first drink she did sit at tables uninvited occasionally and that after the first drink she would ask that the customer buy her another. She further testified that in each champagne cocktail that was purchased for her there was a small straw and that, acting under instructions from other employees, she saved these straws, placed them in an envelope with her name on it at the end of the evening, and that the envelopes were either picked up in her dressing room or were given by her to the master of ceremonies who in turn gave them to the owner. She was paid her commission at the end of the week by appellant Oxman. Her payroll check, or her weekly salary check, after the first week, was made out in the amount of $100, but pursuant to agreement with appellant Oxman her salary was only $70 per week. After figur-

ing the amount due her as commissions on the drinks that had been purchased for her during the week, she was paid that amount in addition to the $70 she received as salary. If the salary plus the commissions did not equal $100, she received that lesser amount.

Louis M. Cardinale, an agent of the Alcoholic Beverage Control Department, testified that he went into the Clayton Club on February 25, 1955, at approximately 9:15 in the evening. He seated himself at the bar and very shortly was approached by a female entertainer in the premises, Benita Francis. A short conversation ensued and she left his presence for a few minutes. She returned shortly and asked him if he was going to buy her a drink and he told her that if she wanted one he would buy it for her. The entertainer then told the licensee to ''give me my usual shot'' and the agent paid for the drink. (The licensee had been standing right in front of them during this time.) She then left his presence and went to a table with two young men. A waitress came from that table up to the bar and while standing next to the agent ordered three drinks and mentioned Benita's name to the licensee. He mixed three drinks and they were taken to the table at which Benita was seated. Benita subsequently left the two patrons and put on her strip-tease act on the stage.

At approximately 12:30 in the morning on February 26th, Agents Freschauer and Cardinale went into the Clayton Club for the second time that evening. At the time they entered Benita Francis was on stage doing her act. After her act was finished and she had put on her street clothes she came up behind Agent Freschauer and said hello. He stated that he didn't recognize her with her clothes on and she said that most people didn't and she asked ''aren't you going to buy me a drink?'' He answered that he would buy her a drink and she ordered it from appellant Oxman, the licensee, who was on duty as bartender; that he paid for this drink and she immediately drank it and ordered another which he also paid for. He asked her what she was drinking and she stated that they were champagne cocktails. He offered the view that $1.25 was quite expensive for such a small drink and she suggested that he buy a bottle of champagne. A bottle of champagne was purchased by the agent and two or three drinks apiece were had from the bottle. At approximately this time Benita Francis was informed that these men were Alcoholic Beverage Control agents and she was taken down to the department office for questioning.

Agent Freschauer testified that on his first visit to the Clayton Club earlier in the evening of February 25th he overheard Benita Francis asking the man seated to her right at the bar if he would buy her a drink. Freschauer testified that the man ignored her request.

Appellant licensee, Oxman, testifying in his own behalf, denied that he ever made any arrangement with Linda Joyce, Benita Francis or any other entertainer for the solicitation of the buying of drinks by patrons of the club, or that any of the entertainers received any commission on drinks purchased for them by patrons. He admitted that he hired Benita Francis and that she was working in his establishment on the night of February 25, 1955, and the early morning of February 26, 1955, the dates of the visits by the two liquor agents, and that Benita Francis had ordered a champagne cocktail from him and that Agent Cardinale had paid for it. Appellant licensee further testified in regard to the circumstances surrounding the purchase of a bottle of champagne. He indicated that the entertainer had first ordered it and he refused to serve it; that the waitress then ordered it and finally the liquor agent ordered it, at which time it was sent to his table and paid for by the agents. Appellant licensee further stated that Benita Francis always drank champagne. Appellant licensee again discussed the incident involving the sale of the bottle of champagne later on in the hearing and stated that a bottle of champagne was ordered and finally that he had sold it, and that it was paid for by the agent. He testified also that as far as he was concerned it was all right for the entertainers to accept drinks purchased for them by customers and that Benita Francis frequently sat with customers in his premises.

Patricia Kelly, Joan Starr and Toni Knight were called by appellant licensee and testified that they were entertainers at the Clayton Club; that they had never heard Linda Joyce mention any commission arrangement with appellant; and that they had no such arrangement themselves.

The applicable statutes are as follows:

Section 24200.5, subdivision (b), Business and Professions Code:

"Notwithstanding the provisions of Section 24200, the department shall revoke a license upon any of the following grounds:

.   .   .   .   .   .   .   .   .   .   .   .   .

" (b) If the licensee has employed or permitted any persons

to solicit or encourage others, directly or indirectly, to buy them drinks in the licensed premises under any commission, percentage, salary, or other profit-sharing plan, scheme, or conspiracy.''

Section 25657, Business and Professions Code:

''It is unlawful:

'' (a) For any person to employ, upon any licensed on-sale premises, any hostess or entertainer for the purpose of procuring or encouraging the purchase or sale of alcoholic beverages, or to pay any such hostess or entertainer a percentage or commission on the sale of alcoholic beverages for procuring or encouraging the purchase or sale of alcoholic beverages on such premises.

'' (b) In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting.

''Every person who violates the provisions of this section is guilty of a misdemeanor.''

Rule 143, chapter 1, title 4, California Administrative Code:

''No on-sale retail licensee shall permit any female employee of such licensee to solicit, in or upon the licensed premises, the purchase or sale of any alcoholic beverage, any part of which is for, or intended for, the consumption or use of such female employee, or to permit any female employee of such licensee to accept, in or upon the licensed premises, any alcoholic beverage which has been purchased or sold there, any part of which beverage is for, or intended for, the consumption or use of any female employee.''

Section 303, California Penal Code:

''It shall be unlawful for any person engaged in the sale of alcoholic beverages, other than in the original package, to employ upon the premises where the alcoholic beverages are sold any person for the purpose of procuring or encouraging the purchase or sale of such beverages, or to pay any person a percentage or commission on the sale of such beverages for procuring or encouraging such purchase or sale. Violation of this section shall be a misdemeanor.''

Appellant attacks the testimony of Linda Joyce and the finding that appellant employed and permitted her to

solicit and encourage patrons to buy her drinks under a scheme or conspiracy by which she was to receive a commission. The revocation of appellant's license under Count VII was based upon this finding.

Appellant contends that there is insufficient proof that the champagne cocktails purchased for Linda Joyce and consumed by her were alcoholic beverages. However, the record shows that Linda Joyce testified that she ordered champagne cocktails and was served what purported to be champagne cocktails. Under the case of *People* v. *Minter,* 73 Cal.App.2d Supp. 994 [167 P.2d 11], this was a sufficient identification of the alcoholic beverage. Furthermore, this was not the only evidence that she was served champagne cocktails, as Linda Joyce testified that she had champagne in her home and knew how it tasted; that in drinking the drinks served her in the licensed premises, they were either champagne or a cheap wine. ■ The California cases have held that a person who has tasted alcoholic beverages before may testify as to the nature of the drink and that such testimony is enough to support a finding of the alcoholic content thereof. (*People* v. *Deibert,* 117 Cal.App.2d 410, 426 [256 P.2d 355] ; *People* v. *Mueller,* 168 Cal. 526, 528-529 [143 P. 748, L.R.A. 1915B 788] ; *People* v. *Bassetti,* 58 Cal.App. 390, 392 [208 P. 696].) Thus it is obvious that the alcoholic content of the drinks is proved by both the fact that she ordered champagne cocktails and that she testified she knew the taste of champagne and that the drinks were either champagne or a poor wine, either of which is obviously an alcoholic beverage.

Appellant also attacks the testimony of Linda Joyce as unworthy of belief and contends also that she was in a conspiracy to "shake-down" appellant. There is no evidence in the record which supports, much less compels, such a conclusion. The credibility of the witness was a matter for the hearing officer and the department to pass upon, and there is nothing inherently improbable in the testimony.

■ Appellant contends also that Linda Joyce must be considered an accomplice in a conspiracy to violate the B-girl statutes and consequently Penal Code, section 1111, setting forth the requirement of corroboration in criminal proceedings, is applicable. There is no merit in this contention. In the case of *Murphy* v. *Board of Medical Examiners,* 75 Cal. App.2d 161 [170 P.2d 510], the contention was made that the evidence to support the decision was insufficient since the two women upon whom the abortions were performed were ac-

complices. The court dismissed this argument with the following language, on page 168 of the opinion:

". . . Moreover, the requirements of corroboration in a criminal case do not apply to administrative proceedings. The true rule is stated in *Lanterman* v. *Anderson*, 36 Cal.App. 472 [172 P. 625], a case in which the revocation for abortion of a physician's license was upheld. The court said at page 477: 'The last contention which we shall notice is that there was no legal or sufficient evidence authorizing the medical board to make the order complained of. The force of this objection rests chiefly upon the assertion that all the material testimony furnished against the appellant was that given by accomplices. The action not being criminal in its nature, it is again apparent that the statutory mandate that a person may not be convicted upon the uncorroborated testimony of an accomplice has no application here. We feel satisfied that any witness whose testimony as to competent facts was convincing to the board engaged in the hearing of the charge would be legally sufficient. . . . We have expressed the conclusion, however, that the testimony of persons who might be accomplices could be received and might be considered by the board trying the charge. . . .'"

Upon the oral argument and in his briefs appellant argues that the contract between appellant and Glendale Attractions under which Linda Joyce and the other entertainers were employed created an independent contractor relationship and not a relationship of employer and employee between appellant and the entertainers. There is no merit in this contention for section 24200.5, subdivision (b), makes no mention of employees, but the language is "has employed or permitted any persons to solicit or encourage others, directly or indirectly, to buy them drinks in the licensed premises under any commission, percentage, salary, or other profit-sharing plan, scheme, or conspiracy." Penal Code, section 303, likewise does not refer to employees, but rather to the employment of persons for these same purposes. We agree with the following statement of the learned trial judge with reference to this contention:

"If the contract between petitioner and Glendale Attractions under which the entertainers were employed created an independent contractor relationship and not that of employer and employee, it applied only to the performances of the entertainers as dancers—it did not extend to the acts of the entertainers in seeking patrons to purchase drinks for them

or as to any other contractual deals or transactions with petitioner. In the other deals and transactions the relationship of employer and employee existed.''

We are convinced that the evidence before the department supports the findings made and the order suspending and revoking appellant's license. Appellant's vigorous and lengthy attack on the findings is but an argument as to the weight of conflicting evidence, and the weight of the evidence was for the department to determine. It may be conceded that if the department had found that the evidence was not sufficient to justify the revocation of appellant's license, such finding would find support in the record, but that does not help appellant. Under the rule hereinbefore stated, we, as a reviewing court, are limited to ascertaining whether or not upon the entire record there is substantial support for the decision under review. That there is such support we entertain no doubt.

The holder of an on-sale license for the sale of alcoholic beverages is charged with the responsibility of seeing to it that the license is not used in violation of the law. Under the findings of the department, which we have held are supported by sufficient evidence, it is clear that appellant licensee has not used his license in accordance with the rules laid down in the statutes hereinbefore quoted, and that the judgment of the trial court to that effect must be affirmed.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied October 7, 1957, and appellant's petition for a hearing by the Supreme Court was denied November 5, 1957.