**STATE of Maine**

v.

**Robert LIZOTTE.**

Supreme Judicial Court of Maine.

June 13, 1967.

Foahd J. Saliem, County Atty., and Richard A. Foley, Asst. County Atty., for appellant.

Ernest L. Goodspeed, Jr., Augusta, for appellee.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, DUFRESNE and WEATHERBEE, JJ.

MARDEN, Justice.

On appeal. Appellant was convicted of breaking, entering and larceny, which conviction, it may fairly be stated, was based upon a presumption of guilt arising from his possession of stolen goods, which possession was unsatisfactorily explained.

The property, the possession of which by the accused raised the reference presumption, was trading stamps popularly known

as "S & H Green Stamps" issued and sold by the Sperry-Hutchinson Corporation to vendors of goods and services and which when issued by such vendors to its vendees represent a discount or premium.

It is unquestioned that forcible entry was made into the office of Central Maine Motors, Inc., in Waterville, an automobile sales and service garage (Motors), on the weekend of September 4–6, 1965. A truck and the office safe containing cash and "S & H Green Stamps" were taken.

A local representative of the Sperry-Hutchinson Company, an employee of that company of some over three years, testified that on August 30, 1965 he was employed as a salesman with exclusive territory of three counties, including Kennebec; that on that date he sold and delivered to Motors a package, wrapped in polyethylene, of ten books of the Green Stamps; that every book is coded and numbered, the code being expressed in three letters and the numbers from one to one thousand; that each book contains five thousand stamps, each stamp bearing the book, letter, code and number; that on that date, he sold Motors books with code letters ITS and books numbered 41 to 50, inclusive; and that the transaction was recorded on a multiple receipt form signed by both him and Motor's Office Manager, the original going to the Sperry-Hutchinson Company to account for the designated books in his possession, and a copy to Motors as receipt for the purchase price. The Motors copy of the receipt, identified as State's Exhibit 2, was offered and admitted as evidence over objection by the respondent.

The code letters and number of the top book in the package was visible through the wrapping and was established as ITS 041. The codes and numbers of the remaining nine books in the package were not visible through the wrapping. The wrapping bore a label indicating the contents of the package as books ITS 041–050, inclusive. The agent testified that there is no duplication in code or serial number on the stamps issued by the Company and that the method of packaging was as indicated by the label. Reference to the numerical identity of the books involved was made interchangeably throughout the trial as three digits, the first being a zero, or two digits expressing consecutive numbers from 41 through 50. The only legitimate source of supply of such stamps is through the Sperry-Hutchinson Company.

Upon the purchase of the stamps by Motors the package unopened was placed in the office safe. On Friday, September 3, 1965 the Office Manager opened the package and removed the two top books of the package which books were "41" and "42." The remaining eight books were left in the safe at the close of business on September 4, 1965. The Office Manager did not examine the remaining eight books to determine the code letters and numbers.

Between the close of office business on Saturday, September 4, 1965 and the morning of September 6, 1965 the forcible entry was made and the safe, including the stamps, disappeared.

On September 11, 1965 a friend of the accused while riding in his automobile saw four books of "Green Stamps" in the glove compartment of the car and purchased one book from the defendant for $1.00. A few days later she removed the stamps from the book and pasted them into four "Green Stamp" coupon books, each taking 1200 stamps, and on September 25, 1965 offered them for redemption in merchandise at the "Green Stamp" store in Waterville. The four books were marked for identification as State's Exhibits 1 through 4 and one such book, identified as State's Exhibit 1, was admitted as evidence over objection by the respondent.

The store manager, having been previously notified of the theft, observed that the stamps offered were all ITS 49 and notified the police, following which the appellant was charged.

In defense the respondent alleged that he was confined to his home by accidental injury on the weekend in question, with one or both of his parents present, which allegation was uncorroborated, and that he purchased the stamps, in the presence of two friends, from an unidentified person, which purchase was uncorroborated.

The friend who purchased the stamps from the accused testified that the accused had told her that they had come from a safe in a Brunswick store.

Appellant's points of appeal are five in number, three challenging the sufficiency of the evidence to justify the verdict and four and five directed specifically to the admission as evidence, over objection, of State's Exhibit 2 (receipt) and State's Exhibit 1 (one of the coupon books filled with the stamps ITS 49). All of the points of appeal challenge the validity of the identification of the stamps traced to the respondent as being those taken from Motors.

■■■ The written receipt pertaining to the transaction between the Sperry-Hutchinson Company agent and the office manager by itself would be as against a third party, this accused, hearsay of the facts recorded and inadmissible for proof of those facts, but when the signer of the receipt is a witness, and identifies the receipt as having been executed by him, the entries recorded thereon are prima facie evidence of the facts recited. Littlefield v. Cook, 112 Me. 551, 554, 92 A. 787.[1] Here two persons executed the receipt, both appeared as witnesses and identified the document. Its admission into evidence was not error.

Whether there exists reversible error turns upon the question of whether the stamps traced to the possession of the accused have been established as those taken from Motors. When the contents of a package is in issue, what probative force is to be granted the label on the exterior of the package?

■■ It has been held that the exterior labels on packages, or testimony as to the same, is competent evidence to raise a jury question as to the contents of the package. See Kennedy v. State of Alabama (1913) 182 Ala. 10, 62 So. 49, [9] 52; Sneed v. State (1955) 235 Ind. 198, 130 N.E.2d 32, [3] 33; and Pablo v. United States (9 CCA 1917) 242 F. 905, [2] 906. Of these three cases, *Kennedy* [9] 52 expresses its rationale in the following terms.

"The correct theory of the matter, * * * is that inscriptions designedly placed on * * * packages, in the ordinary way, for the obvious purpose of indicating their nature or contents, may in general be regarded as competent evidence thereof, as least against those persons who have such objects in their possession, or who dispense them to others. Their external indicia are some evidence, stronger or weaker according to accompanying circumstances, of their internal contents."

Paraphrasing, it is realistic to recognize a great improbability of untrustworthiness in package markings, attached in due course of marketing, the strength of such evidence depending upon the circumstances.

■■ In this case there is direct evidence of the nature of the trading stamps, their controlled circulation, and their coding and numbering, which is consistent with the fact that they have monetary value and must of necessity be strictly controlled by a method of packaging and merchandising. The agent of the company gave direct evidence on the identity of the stamps, which he sold and delivered to Motors and in the light of this testimony, together with the undisputed testimony bearing upon the controlled merchandising custom, yielded competent evidence for jury determination of whether the identity of the stamps had been established. Reasonable inferences drawn would support a conclusion of this identity, absent evi-

---

1. See generally Annot. 80 A.L.R.2d 915.

dence to raise a reasonable doubt to the contrary.

 Upon a jury conclusion that a "break" occurred at Motors and that the stamps traced to the accused were of those belonging to Motors, the possession soon afterward of those stamps by the accused raised a reasonable presumption against the accused of guilt of larceny "and unless he can account for that possession, consistently with his innocence, will justify his conviction. Evidence of this nature is by no means conclusive, and it is stronger or weaker, as the possession is more or less recent" State v. Merrick, 19 Me. 398, 400, and State v. Russo, 127 Me. 313, 143 A. 99. This presumption applies not only as to larceny, "but also of the breaking and entering when larceny is a part of such greater crime," State v. Saba, 139 Me. 153, 158, 27 A.2d 813, 816. The acceptance or nonacceptance of the respondent's alibi for the weekend in question and his accounting for the stamps "consistent with his innocence" was a jury question, and the jury's non-acceptance was within its competence.

Appeal denied.

Judgment for the State.