[Civ. No. 20198.   First Dist., Div. Two.   Feb. 27, 1963.]

WILLIAM E. WHORISKEY, Plaintiff and Appellant, v. CITY AND COUNTY OF SAN FRANCISCO et al., Defendants and Respondents.

Husted, Pinney, Smith & Ogg, W. M. Pinney, Jr., and William R. Conklin for Plaintiff and Appellant.

Thomas M. O'Connor, City Attorney, and Paul J. Di Noia, Deputy City Attorney, for Defendants and Respondents.

AGEE, J.—Petitioner appeals from the order and judgment of the superior court denying a writ of mandate to restore him to his previous civil service position as ambulance driver for the San Francisco Department of Public Health.

By letter dated July 10, 1959, the director of public health summoned petitioner to appear before him, at a public hearing, on July 17, 1959, at 10 a.m., to show cause why he should not be dismissed from the service of the department. The charge was stated therein as follows: "Inattention to duties, namely failing to report for duty on July 2, 1959. To date this year you have been off duty 7 times without a satisfactory explanation."

The hearing was held on July 17, 1959, but petitioner was not present. So a rehearing was held on November 12, 1959, at which time petitioner and his counsel were present. The record of this second hearing is the only one considered herein.

At the conclusion of this hearing the public health officer dismissed the petitioner from the service for inattention to duty. Petitioner argues that he was charged on two grounds, one, that he failed to report for duty on July 2, 1959, and, two, that he had been off duty seven times without a satisfactory explanation. He states that there "was no evidence produced to substantiate" the second charge. In view of our conclusion that there is substantial evidence to support the charge as to July 2, 1959, it is unnecessary for us to decide whether the sentence relating to the seven prior absences is or is not a separate charge or whether it is merely an explanation of why the failure to report for work on July 2, 1959, was the "straw that broke the camel's back."

■ If the charge as to July 2, 1959, is sufficiently supported by the evidence, then we need not determine whether the seven prior absences were "without a satisfactory explanation." (*Vestal* v. *State Personnel Board* (1960) 178 Cal.App.2d 920, 922 [3 Cal.Rptr. 618].)

Section 154 of the Charter of the City and County of San Francisco provides in part as follows: "The appointing officer [i.e., the public health officer] shall publicly hear and determine the charges, and may exonerate, suspend or dismiss the accused." The petitioner appealed his dismissal to the civil service commission, which upheld the action of the appointing officer. The petition to the superior court for a writ of mandate followed. The matter was submitted on the record and the petition was denied. This appeal from the judgment entered upon such denial was thereupon taken.

■ The first sentence of section 154 provides that a civil service employee shall not be removed or discharged "except for cause. . . ." A definition of cause is not given. However, in *Bannerman* v. *Boyle,* 160 Cal. 197, 206-208 [116 P.

732], the Supreme Court interpreted the meaning of "cause," as used in the Charter of the City and County of San Francisco, as follows: "The words 'for cause,' without more, imply good cause; the existence of some fact which would constitute a reasonable cause for removal. . . . So understood, there is nothing in its terms which implies an intent to give the clause conferring power to remove 'for cause,' any other than its well-established meaning, that is, a sufficient cause proven upon a hearing after reasonable notice."

Thus, *any* reasonable, sufficient cause may be grounds for dismissal *by the appointing officer*. ▮▮ The appointing officer has a wide discretion in determining the fitness of an employee to continue performing the duties required by his employment. (*Hayman* v. *City of Los Angeles,* 17 Cal.App. 2d 674, 679 [62 P.2d 1047].)

Although not applicable here, the charter provides that the civil service commission may also hear charges in the first instance if filed by a citizen (not the appointing officer) or by the authorized agents of the commission when the appointing officer neglects or refuses to act. In such instance the causes for removal or discharge are limited to eight specified grounds, one of which is "inattention to duties."

▮▮ The general power of the appointing officer to discharge is not so limited. (*Cronin* v. *Civil Service Com.,* 71 Cal.App. 633, 636, 640 [236 P. 339]; *Fee* v. *Fitts,* 108 Cal. App. 551, 556 [291 P. 889].) However, the charging letter does use the phrase "inattention to duties" and thus gives rise to one of petitioner's contentions.

▮▮ In his opening brief, petitioner cites a number of negligence cases which define "inattention" (to duties). He apparently contends that one cannot be inattentive to duty until he is actually on the job and that an inexcusable absence is something different than "inattention to duties." We do not agree. We construe an inexcusable absence as constituting an inattention to duties.

▮▮ Indeed, petitioner says so in his closing brief. He points out that an employee who is prevented from reporting for work *through no fault of his own* should not be considered to be guilty of inattention to duty. With this we agree. Then he says: "It logically follows, then, that only an *unjustified* absence be considered grounds for the charge of inattention to duty." (Italics ours.) With this we do agree.

The sole question on this appeal is whether there is sub-

stantial evidence to support the charge that petitioner's failure to report for duty on July 2, 1959, was, under the circumstances, an "inattention to duties."

No contention is made that dismissal is too severe and is not warranted even though this charge is upheld. The petitioner's past employment record is such that the director of public health would be derelict in his duties if he did not so act. (See *Fernelius* v. *Pierce*, 22 Cal.2d 226, 234 [138 P.2d 12].)

With regard to evidence of past misconduct, petitioner's counsel stated his position at the hearing as follows: "Only for a limited purpose would I make the objection [to such evidence,] and that is that the evidence certainly would be admissible to determine the degree of any punishment that might be inflicted on Mr. Whoriskey, but should not be admitted to prove the charges."

It is undisputed that petitioner failed to report for duty at midnight, July 2, 1959, and that he also failed to notify the department that he was unable to report. His explanation was that he had taken a sleeping pill, had fallen asleep on the sofa in his home about 5 o'clock in the afternoon, had not heard the telephone ringing at about 11 o'clock, and was still sleeping soundly until aroused by his wife shortly after midnight.

The appointing officer (director of public health) was not required to believe this explanation. Earl Blake, the administrative superintendent of the emergency hospital services, testified as follows: "Over a period of many years Whoriskey has had a history of alcoholism, which he knows." Blake was not cross-examined by petitioner's counsel on this point. Petitioner denied drinking hard liquor but admitted drinking beer. In response to the question, "How much beer a day do you drink?" he testified: "Sometimes four or five cans, sometimes six cans."

Lee Fredericks, the booking steward at Central Emergency Hospital, testified that he had known and worked with petitioner for many years. He was familiar with the speech of petitioner when he was under the influence of liquor as contrasted to his speech when he was not under such influence. He testified that he made the following report to Joseph Clary, assistant administrative superintendent: "On Wednesday evening 1 July 59 at 11 PM I reported for duty at Central Emergency Hospital as Booking Steward. At approximately 11:10

PM Driver Kenneth Hopkins remarked that his relief, Mr. William Whoriskey, had not yet come in. I telephoned Mr. Whoriskey's home, allowing the phone to ring an unusually long time in case Mr. Whoriskey had overslept. There was no answer. Having in mind the possibility of an error on my part, I rechecked the phone number and called again with the same results. Mr. Hopkins and I discussed the fact that Mr. Whoriskey would not be officially late until 12 midnight and agreed to postpone any action until that time. At that time Mr. Whoriskey was again called. A woman's voice, which I immediately recognized as that of Mrs. Whoriskey, answered and I asked her if she knew where Mr. Whoriskey was or if he had intended to come into work. Mrs. Whoriskey explained that she had returned home about ten or fifteen minutes ago and had gone straight to bed and only when she had answered the phone did she realize that Mr. Whoriskey was asleep on the sofa. When I asked if he intended to come into work she said that I had better talk to him. When Mr. Whoriskey talked to me on the phone his voice was thick and blurred and his conversation was confused and incoherent and consisted of such questions as 'Do you think I should come in?' and 'Do you want me to come in?'. After several minutes of this Mrs. Whoriskey came back on the phone and I suggested that it would be best if we obtained a relief driver for Mr. Whoriskey and she agreed.''

Petitioner's wife testified that she got home about 11:30 p.m. and that she answered the telephone when it rang shortly after midnight; that Mr. Fredericks asked about her husband, so she aroused him from where he was lying on the sofa; that he talked to Fredericks briefly but then told her to take over so that he could get his dentures and put them in; that he did not return to the telephone but told her to tell Fredericks to get a relief.

After this incident, Mr. Blake made a report on July 9, 1959, to the public health director, which report was read into the record by stipulation. Although the stipulation was without qualification and the reading of the report into the record occurred before any objection or limitation was made by petitioner's counsel, we are treating such report for the limited purpose of showing the reasonableness of the director's dismissal of petitioner, based upon the premise that the July 2, 1959, incident was of greater significance than it otherwise would have been if it were isolated from petitioner's past mis-

conduct. Also, it has a bearing on the credibility to be given to petitioner's explanation as to the cause of his inability to report for work.

Mr. Blake's report is as follows:

"A review of the unsatisfactory work record of William Whoriskey leaves me no choice but to recommend that he be dismissed from this Service.

"On April 26, 1956, after numerous talks, pleadings and reprimands, I sent Driver Whoriskey a letter citing his numerous absences and warning him that any absences other than legitimate illness would be deemed absence without leave.

"On December 28, 1956, you suspended him for 10 working days for inattention to duties—namely: reporting for duty under the influence of liquor and for not being in condition to operate an ambulance.

"On January 22, 1957 I recommended that he be dismissed for failure to report for work and for being in a very apparent state of intoxication as indicated by his incoherent talk. Dr. Bernstein (a City Physician) was sent to Whoriskey's house at my request and subsequently reported that Whoriskey was not home.

"On August 8, 1957 you again suspended Whoriskey for 30 working days for inattention to duties—namely: Reporting for duty on August 8, 1957 and sleeping on duty; not able to respond to an emergency call when called by the steward; not being in condition to operate an ambulance. Sobriety is questioned.

"On July 2, 1959 Whoriskey failed to report for work and did not even request a relief. When the Booking Steward was finally able to contact Whoriskey by phone, Whoriskey reported 'he was in no condition to report for duty.'

"So far, this year, he has been off 7 times under circumstances subject to suspicion of sobriety.

"This man obviously is not temperamentally fit to drive an ambulance nor to assist in the care of injured or ill persons.

"I recommend immediate dismissal."

It should be kept in mind that in the letter of July 10, 1959, petitioner was suspended effective as of that date. Petitioner admitted that he had received this letter. Yet he did not appear at the hearing noticed for July 17, 1959, nor did he advise the director that he was not going to appear. It was not until the rehearing, held on November 12, 1959, that he of-

fered any explanation to anyone in the department of public health for his absence from work on July 2, 1959.

At the rehearing, petitioner had an answer to everything. He was tired because he had worked until 7:30 a.m. on July 1, 1959 (16½ hours before he was to report for work again); he could not sleep because he had drunk coffee for breakfast and his arm pained him; he took a sleeping pill about 4:30 p.m. and went to sleep on the sofa about 5 p.m.; he did not hear the telephone ring shortly after 11 p.m. because he was sleeping soundly; no one else was there to answer it; when his wife aroused him shortly after midnight, he spoke to Fredericks briefly and then went to get his dentures; he offered no explanation as to why he didn't go back to the telephone and finish his conversation with Fredericks; he admits he told his wife to tell Fredericks to get a relief.

Petitioner testified that he had intended to go to work that night. Why, when Fredericks phoned, didn't he start out then? He was fully clothed and in a matter of minutes he could have been at the Central Emergency Hospital. Before talking to petitioner, Fredericks had asked petitioner's wife "if he intended to come into work." This indicates that the way was then open for petitioner to do so. The record shows that a relief driver was not assigned until Fredericks was told by petitioner's wife that she agreed with Fredericks' suggestion that one be obtained. At best, petitioner would only have been approximately thirty minutes late. Was there something about his condition that made it inadvisable to report for work? These are matters that can be considered by the appointing officer when considering whether the failure to report for work was or was not excusable.

After petitioner had been notified by the letter of July 10, 1959, of his suspension and of the hearing scheduled for July 17, 1959, he went to a Dr. Moulton. The doctor's testimony gives rise to an inference that petitioner might have been preparing his defense for the purpose of the hearing. The doctor testified as follows: "The only time I saw him was on July 15th, relative to pain in the left shoulder, neck and scapular region, without history of injury and without *objective* findings. The *subjective* pain was the only problem at that time." (Italics ours.) It is obvious that petitioner's self-serving complaint of pain is subject to being construed as indicated above.

In *Damiani* v. *Albert*, 48 Cal.2d 15 [306 P.2d 780], a dep-

uty sheriff was discharged; the civil service commission sustained the discharge; the superior court denied a petition for a writ of mandate. Our Supreme Court stated (p.17): "On an application for a writ of mandate to review an order of a local quasi-judicial body such as the commission in the present case, the trial court does not have the right to judge the intrinsic value of the evidence or to weigh it. The power of the court is confined to whether there was substantial evidence before the commission to support its findings." (Citing authorities.)

Petitioner seeks to apply a rule which would require us to test whether the findings are supported by substantial evidence in the light of the *whole* record, citing *Universal Camera Corp.* v. *National Labor Relations Board* (1950) 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456]. He quotes from that decision as follows: "The substantiality of evidence must take into account whatever in the record fairly *detracts* from its weight." (Italics added.)

This, however, is not the rule in California. In *Rosales* v. *Department of Alcoholic Beverage Control* (1959) 171 Cal. App.2d 624 [341 P.2d 366], it was held that the language: " 'findings [which] are supported by substantial evidence in the light of the whole record,' " which is found in California Constitution, article XX, section 22; Business and Professions Code, section 23084; and Code of Civil Procedure, section 1094.5, is not equivalent to the substantial evidence rule formulated in the *Universal Camera Corp.* case.

The court states, at page 625: "It is now settled that the quoted language signifies 'no more than the adoption by the Legislature . . . of the "substantial evidence" rule as generally applied in judicial proceedings in this state . . .' " (Citing and relying on *Martin* v. *Alcoholic Beverage etc. Appeals Board* (1959) 52 Cal.2d 238, 246 [340 P.2d 1]).

The rule "generally applied in judicial proceedings in this state" was stated in *Marcucci* v. *Board of Equalization* (1956) 138 Cal.App.2d 605 [292 P.2d 264], at page 608: "The scope of review of its [agency] decisions is, therefore, limited to determining whether or not there is substantial support therefor to be found in the record, and both the superior court in mandate proceedings brought before it and this court upon appeal are without authority to reweigh the evidence. [Citations.] In determining whether or not there is substantial evidence in support of the administrative decision,

conflicts in the evidence must be resolved in favor of that decision and all legitimate and reasonable inferences must be indulged in its support. [Citations.]'' (See also, *Adler* v. *Department Alcoholic Beverage Control* (1959) 174 Cal.App.2d 256, 258 [344 P.2d 366]; *Oxman* v. *Department of Alcoholic etc. Control* (1957) 153 Cal.App.2d 740, 744 [315 P.2d 484]; *Morell* v. *Department of Alcoholic Beverage Control* (1962) 204 Cal.App.2d 504 [22 Cal.Rptr. 405].)

Judgment and order affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.

A petition for a rehearing was denied March 18, 1963, and appellant's petition for a hearing by the Supreme Court was denied April 24, 1963.