[Civ. No. 22565.   First Dist., Div. Two.   Oct. 18, 1965.]

EDWARD C. NEELY, Plaintiff and Respondent, v. CALI-
FORNIA STATE PERSONNEL BOARD et al., De-
fendants and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, and Leonard M. Sperry, Jr., Deputy Attorney General, for Defendants and Appellants.

Charles P. Scully and Lowell A. Airola for Plaintiff and Respondent.

AGEE, J.—The State Personnel Board appeals from the superior court judgment setting aside the punitive action taken by the board against respondent Edward C. Neely, a civil service employee, for certain conduct discussed below. The main issue is whether the findings and decision of the board are supported by substantial evidence.

The board is created and established by article XXIV of the

California Constitution and derives its jurisdiction and adjudicating power therefrom . (*Boren* v. *State Personnel Board,* 37 Cal.2d 634, 638 [234 P.2d 981].) Its factual determinations "are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence." (*Shepherd* v. *State Personnel Board,* 48 Cal.2d 41, 46 [307 P.2d 4].)

The rule which applies to agencies created solely by *statute,* such as the Board of Medical Examiners (see *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301 [196 P.2d 20]), the Real Estate Commissioner (see *Sipper* v. *Urban,* 22 Cal.2d 138 [137 P.2d 425]), and the Insurance Commissioner (see *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384 [184 P.2d 323]), is not applicable to so-called "constitutional agencies" such as the appellant herein and the Board of Equalization. (See *Shepherd* v. *State Personnel Board, supra,* and *Covert* v. *State Board of Equalization,* 29 Cal.2d 125, 131 [173 P.2d 545].)

In the instant case the function of the superior court is that of a reviewing court, not a trial court. We also must regard the evidence in the light most favorable to the findings of fact made *by the board,* not those made by the superior court, and all legitimate and reasonable inferences must be drawn in their support. (*Lorimore* v. *State Personnel Board,* 232 Cal.App.2d 183, 186 [42 Cal.Rptr. 640]; *Marcucci* v. *Board of Equalization,* 138 Cal.App.2d 605, 608 [292 P.2d 264].)

Contrary to the above authorities, respondent urges that we test whether the findings of the board are supported by substantial evidence in the light of the record as a *whole,* citing *Universal Camera Corp.* v. *National Labor Relations Board,* 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456]. The court in that case stated: "The substantiality of evidence must take into account whatever in the record fairly *detracts* from its weight." (Italics added.)

This is not the California rule. The same contention and the same cited case (*Universal Camera*) were discussed and rejected in *Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 238, 246-247 [340 P.2d 1], and *Whoriskey* v. *City & County of San Francisco,* 213 Cal.App.2d 400, 408-409 [28 Cal.Rptr. 833].

*Facts.* Neely is a referee of the Industrial Accident Commission (I.A.C.) and J. William Beard is its chairman and Neely's appointing power. Prior to April 17, 1963, Neely was acting as presiding referee. This position was not a separate

civil service classification and did not carry any additional pay. Its duties included the assigning of case hearings to other referees.

On April 17, 1963, Beard reassigned Neely to normal referee duties and appointed another referee as presiding referee, effective the following day. On July 2, 1963, Beard served written notice of dismissal upon Neely. Following Neely's answer and request, the matter was heard on August 19 and 20, 1963, before a hearing officer of the State Personnel Board.

On September 13, 1963, the board found the following causes for disciplinary action to exist: (1) discourteous treatment of Attorney Garoni on June 17, 1963, (2) inefficiency on April 16, 1963, in reassigning case hearings as per instructions of Beard; and (3) insubordination and discourteous treatment of Beard on April 17, 1963.

The board modified the punitive action of dismissal to suspension, from July 2 to September 23, 1963, and a one-step salary reduction, i.e., from $1,351 to $1,286 per month, effective September 23, 1963.

In the ensuing mandamus action filed by Neely, the superior court reversed as to causes (1) and (2) and that portion of (3) relating to insubordination. The matter was ordered remanded to the board for further hearing and reconsideration of penalty with respect to discourteous treatment of Beard on April 17, 1963.

*Garoni incident.* On June 17, 1963, Neely presided at a hearing in which Garoni appeared as the attorney for the applicant. The board found that during the course of the hearing Garoni "became angry, argumentative and disrespectful" toward Neely. The latter thereupon adjourned the hearing. The board found that he then approached Garoni, who was at the counsel table, with clenched fists held in a fighting position and said, " 'I ought to punch you in the nose.' " However, Neely did not strike or attempt to strike Garoni.

The board held that Neely's "said conduct in threatening Garoni constitutes discourteous treatment of the public within the meaning of subdivision (m) of Government Code Section 19572." This provides that one of the causes for discipline of an employee is "Discourteous treatment of the public or other employees."

A number of witnesses testified to the above described conduct and there is no question that the board's finding is supported by substantial evidence.

■ However, Neely's real contention is that an attorney for an applicant is not a member of the "public" within the meaning of the statute. We think it clear that, as used therein, the word "public" includes everyone with whom a civil service employee comes in contact by reason of his employment. Certainly those persons who have an interest in and are rightfully present in a hearing room at a hearing presided over by a state referee would be included. We hold that Garoni was.

The board has so interpreted the statute and we think correctly. ■ "The administrative interpretation of the statute will be accorded respect by the courts and will be followed if not clearly erroneous." (*Askew* v. *Parker,* 151 Cal.App.2d 759, 763 [312 P.2d 342] ; *Barrett* v. *California Unemp. Ins. Appeals Board,* 190 Cal.App.2d 854, 860 [12 Cal.Rptr. 356] ; *Cohon* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 332, 339 [32 Cal.Rptr. 723].)

■ *Inefficiency.* On April 16, 1963, Beard orally instructed Neely to reassign all of the cases which had been scheduled for hearing before referee Sheehan so that Sheehan might be permitted to work with Panel One of the I.A.C., starting two days later. Neely demurred, observing that hearings were set for the referees approximately six weeks ahead and stating "it is impossible to do it." Beard asked Neely what he would do if Sheehan suddenly became ill and Neely replied that he would have to reassign his cases. Whereupon, Beard instructed Neely to follow the same procedure he would follow in the event such illness occurred.

About one hour later Neely sent Beard a memorandum reiterating the objections which he had made orally and concluding, "Will you please advise me what disposition is to be made of cases already assigned to Referee Sheehan, particularly those which have been continued for further proceedings?"

Neely testified that before he wrote the memorandum, he had "already advised the calendar clerk that he [Sheehan] wouldn't be available and I had to make other arrangements as far as his assignments was concerned." He further testified that he did in fact proceed to make the necessary assignments.

The board found that Neely's memorandum to Beard "demonstrates inefficiency on the part of appellant [Neely] within the meaning of subdivision (c) of Government Code Section 19572. Appellant with almost ten years' experience

as a Referee, with three of those years as Presiding Referee, implies in his memorandum that he is unable, without help from the Chairman [Beard], to perform the relatively simple task of reassigning or continuing Sheehan's cases. . . . Appellant's unnecessary request for help from the Chairman clearly constitutes inefficiency.''

In our opinion, this finding is supported by substantial evidence.

■ *Insubordination and discourtesy.* On April 17, 1963, the day after the above memorandum incident, Beard sent a notice to Neely that he was relieved of his duties as presiding referee and reassigned to normal referee duties.

A few minutes later Neely, with his face flushed and the notice in his hand, went to Beard's office and asked him, ''What in Hell do you mean by this?'' Beard stated that he did not feel that he was receiving sufficient cooperation from Neely and that, in particular, he did not have time to take care of the making of assignments. Neely replied, according to his own testimony, as follows: ''Well, in my estimation this is a shitty ass way of doing things.'' He then turned and walked out.

The board found that the foregoing conduct ''constitutes insubordination and discourteous treatment of another employee within the meaning of subdivision (e) and (m) of Government Code Section 19572.''

We have no doubt that the foregoing conduct of Neely constitutes ''discourteous treatment'' of a fellow employee within the meaning of subdivision (m) but we question whether it constitutes ''insubordination'' within the meaning of subdivision (e).

The term ''insubordination'' as used in said subdivision (e) has been broadly defined as follows: ''. . . insubordination implies a *general course* of mutinous, disrespectful or contumacious conduct.'' (*Coomes v. State Personnel Board,* 215 Cal.App.2d 770, 775 [30 Cal.Rptr. 639]; italics added.)

The board's finding of insubordination is based *entirely* upon the foregoing incident. At the time it took place Neely had in fact already made the reassignment of Sheehan's cases. We hold that the finding of insubordination is not supported by substantial evidence.

■ *Character witnesses.* Neely's counsel read off the names of a number of prominent persons and offered to prove through them ''Neely's conduct both as a referee and supervising referee from the standpoint of his competency, judicial

temperament, impartiality, quantity and quality of work, dependability, courteousness to attorneys, witnesses, and generally to Mr. Neely's outstanding abilities as a hearing officer." To this was added the request that these witnesses be allowed to give "their opinion as to whether or not the conduct of applicant's counsel [Garoni] was contemptuous."

The offer was rejected and properly so. Neely's good character was not in issue and evidence thereof was not admissible. (Code Civ. Proc., § 2053.) Nor did the nature of Garoni's conduct require expert opinion. The hearing officer found that "During the course of the hearing Mr. Garoni, attorney for [applicant] Cikes, became angry, argumentative and disrespectful toward appellant [Neely]." The board adopted this finding in its decision.

As to mitigating any punitive action which might be taken by the board, the offered testimony would have added nothing. After finding that Neely's conduct on the three occasions in question was improper, the board stated: "However, because of his long service and excellent record, the doubts in this instance will be resolved in favor of appellant [Neely]. The modification [of punitive action] set forth below is not made because the explanation or excuses offered by appellant were in any way acceptable but rather because it is felt that appellant should be given one more opportunity to salvage what was, except for three incidents occurring within a few months, *a lifelong career of meritorious service.*" (Italics ours.)

Finally, Neely suggests that the offered testimony was material to the question as to whether he "made any [threatening] gestures at the time of the Garoni episode."

■ While the Garoni charge is in essence that of an assault upon Garoni, a disciplinary proceeding such as this is civil in nature (*Hansen* v. *Civil Service Board,* 147 Cal.App.2d 732, 738 [305 P.2d 1012]) and evidence of Neely's reputation for peace and quiet would not be admissible. (*Vance* v. *Richardson,* 110 Cal. 414, 416-417 [42 P. 909].)

■ *Scope of Beard's cross-examination.* The hearing officer ruled that, for the purpose of evaluating Beard's testimony *as a witness,* he could be cross-examined as to any bias which he might have toward Neely but that Beard's motive, *as chairman,* in making the charges of misconduct against Neely was not relevant and could not be inquired into.

Neely's counsel was permitted to cross-examine Beard at length as to any matter which tended to impeach his testimony as a witness.

494

The restriction on such cross-examination was proper. It is " ' . . . a recognized rule that an inquiry into extraneous facts to determine the possible improper motive of an executive or administrative board in dismissing an employee is not justified.' " (*Neuwald* v. *Brock*, 12 Cal.2d 662, 676 [86 P.2d 1047] ; see also, *Board of Education* v. *Swan*, 41 Cal.2d 546, 555 [261 P.2d 261].)

In conclusion, we hold that there is substantial evidence to support the board's finding of discourteous treatment of the public (Garoni incident), of inefficiency (reassignment of Sheehan cases) and of discourteous treatment of another employee (Beard) ; we hold that the finding of insubordination is not supported by substantial evidence.

The judgment is reversed, and the superior court is directed to enter judgment instructing the State Personnel Board to set aside its decision and to determine the penalty to be imposed in the light of the foregoing opinion. (Cf. *Shepherd* v. *State Personnel Board, supra,* 48 Cal.2d 41, 51.)

Shoemaker, P. J., and Taylor, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 15, 1965.