[Civ. No. 11376.   Third Dist.   Apr. 25, 1967.]

A. LYNN STEWART, Plaintiff and Respondent, v. STATE PERSONNEL BOARD et al., Defendants and Appellants.

446

Thomas C. Lynch, Attorney General, John Robert Burton and Robert W. Jarvis, Deputy Attorneys General, for Defendants and Appellants.

Wilmer W. Morse for Plaintiff and Respondent.

REGAN, J.—Prior to September 30, 1964, respondent Stewart was a permanent civil service employee of the State of California, holding the position of Parking Facilities Analyst in the Department of General Services. On September 8, 1964, the Director of General Services notified Stewart by letter that he was being laid off as of September 30, 1964, pursuant to the provisions of section 19530 of the Government Code, "due to lack of work."

Stewart appealed to the State Personnel Board, which after

a hearing denied his appeal. He then sought a judicial review of this administrative decision in the superior court pursuant to the provisions of section 1094.5 of the Code of Civil Procedure. The court set aside the decision of the board and referred the matter back to the board for further proceedings. In so doing the court found that the decision of the board contained no finding on the issue of whether there was in fact a lack of work and that there were no facts in the record showing that the organization report, which among other things abolished Stewart's position, was put into effect.

The State Personnel Board appeals from this decision and contends that: (1) the director of the Department of General Services has the power to arrange and rearrange the work to be performed in the department when such changes are made in good faith; (2) there is substantial evidence to support the board's findings that the recommendations of the management report relating to the Parking Facilities Analyst were put into effect; and (3) the board made proper findings of fact on all of the issues before it.

Before turning to the facts, it must initially be noted that factual determinations of a statewide administrative agency which derives adjudicating power from the state Constitution, as does the State Personnel Board, are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence. (*Shepherd* v. *State Personnel Board*, 48 Cal.2d 41, 46-47 [307 P.2d 4]; *Genser* v. *State Personnel Board*, 112 Cal.App.2d 77, 80 [245 P.2d 1090].)

In such a case the function of the superior court is that of a reviewing court and not a trial court. (*Neely* v. *California State Personnel Board*, 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64].) Thus the order of the board can only be set aside as arbitrary on the ground that it was found to be unsupported by substantial evidence. *Lorimore* v. *State Personnel Board*, 232 Cal.App.2d 183, 185-186 [42 Cal.Rptr. 640].) In making its determination the trial court was obligated to confine itself to the record of the administrative proceeding and to refrain from exercising its independent judgment on the weight of the evidence. (*Lorimore* v. *State Personnel Board, supra,* 232 Cal.App.2d at p. 186.)

". . . In fact, the decisions generally have equated the review of administrative determination with the substantial evidence rule applicable to appellate review, i.e., the function of the appellate court begins and ends with a determination as

to whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion reached, disregarding any evidence in the record contrary to the trier's finding. [Citations.]'' (*Lorimore* v. *State Personnel Board, supra,* 232 Cal.App.2d at p. 186.)

The function of the appellate court is the same as that of the superior court, namely, to determine whether the findings of the board are supported by substantial evidence. (*Neely* v. *California State Personnel Board, supra,* 237 Cal.App.2d at p. 489.) This is true whether the trial court upheld the agency's decision (*Martin* v. *Alcoholic Beverage etc. Appeals Board,* 52 Cal.2d 238 [340 P.2d 1]) or ordered it to be set aside. (*Mundell* v. *Department of Alcoholic Beverage Control,* 211 Cal.App.2d 231 [27 Cal.Rptr. 62].) In making such determination, the appellate court must also regard the evidence in the light most favorable to the findings of fact made *by the board,* not those made by the superior court, and all legitimate and reasonable inferences must be drawn in their support. (*Neely* v. *California State Personnel Board, supra,* 237 Cal.App.2d at p. 489; *Hingsbergen* v. *State Personnel Board,* 240 Cal.App.2d 914, 916-917 [50 Cal.Rptr. 59].) Thus the main issue is whether the findings and decision of the board are supported by substantial evidence.

In examining the whole record, we find that there is substantial evidence to amply support the board's decision, that the findings were proper, and that therefore the judgment must be reversed.

The State Personnel Board found that the layoff by the department was made in good faith. As this court stated in *Placer County Employees Assn.* v. *Board of Supervisors,* 233 Cal.App.2d 555, 559 [43 Cal.Rptr. 782]: ''The courts have adopted the criterion of good faith to weigh the legality of actions abolishing civil service positions. The action will be upheld if taken in good faith, but invalidated if it is a subterfuge for the piecemeal dissolution of the civil service system [Citation] or a sham method of ousting an unwanted employee. [Citations.] Reorganization of governmental offices promulgated in good faith and for reasons of efficiency or economy does not 'nullify the basic principle' of civil service even though it results in abolition of one or several civil service positions.''

Here, the superior court did not find a lack of substantial evidence to support the board's finding. Without invoking a judicial finding of absence of good faith, the

superior court had no authority to nullify the board's decision. ■ We ourselves do find evidence of good faith, which evidence shows as follows:

On August 24, 1964, Robert L. Harkness, Director, Department of General Services, issued Administrative Order No. 64-55, which reassigned on a functional basis the duties which had been performed by the Parking Facilities Analyst and resulted in the abolition of that position.

This reassignment was the result of a study made of an organizational problem that had developed within the Department of General Services. Between April 1960, when a survey recommended the creation of the position of Parking Facilities Analyst, and May 1964, when a new management study was made, several significant changes took place. The Department of General Services was formed to perform some of the activities previously performed by the Department of Finance. The Department of General Services had been created to provide more management attention to a variety of activities. The Division of Architecture was transferred to the Department of General Services from the Department of Public Works. The concept of having a coordinated planning function for physical facilities evolved within the Department of General Services. Planning for all physical facilities for the state was placed under one deputy director within the Department of General Services, unlike the organizational structure existent in the Department of Finance, where the position of Parking Facilities Analyst was initially placed. Subsequent to the creation of the Department of General Services, there had developed an understanding that parking was an integral part of providing other physical facilities and not separate and apart from providing the buildings. Because of these changes, the position of Parking Facilities Analyst, as conceived in April 1960, had become outmoded by a modification of the organizational structure developed to meet changing needs.

One of the two deputy directors of the Department of General Services was responsible, under the department's organizational plan, for the design and planning of facilities. However, this deputy director had no direct control over the position of Parking Facilities Analyst. An unsuccessful attempt was made to coordinate the work of the Parking Facilities Analyst with the Design Section of the Office of Architecture and Construction. The Department of General

Services believed that it was necessary to pursue a consistent policy with regard to the placement of facilities. The existing organization of the department made it difficult to achieve a uniform policy. The organizational problem was discussed by the director, Robert L. Harkness, and the two deputy directors of the Department of General Services.

In January 1964, a management study of the transportation service section of the Department of General Services was requested. On May 8, 1964, the results of that study were presented in written form. Among the recommendations contained in this management report was that the responsibilities for the planning, design and maintenance of parking facilities be redistributed within the department, and that the position of Parking Facilities Analyst be abolished.

The management report recommended that the planning of parking facilities be performed by the Facilities Planning Section of the Department of General Services; that the design of parking facilities be performed by the Office of Architecture and Construction; that the Building Maintenance and Protection Section in Property Management and Service be responsible for the repair and maintenance of the parking facilities; and that the clerical operation of the parking facilities, including the collection of fees, the assignment of spaces and the maintenance of waiting lists, be performed by the clerical staff of Transportation Service.

The recommendations of the management report were placed into effect by the director's Administrative Order No. 64-55. Following the reassignment of the Parking Facilities Analyst's duties, there was not enough work to justify the continuance of the position of Parking Facilities Analyst. The layoff of Stewart followed.

The foregoing evidence completely justifies the board's finding that the layoff was made in good faith.

The judgment is reversed.

Pierce, P. J., and Friedman, J., concurred.