[Civ. No. 33226.   Second Dist., Div. Two.   May 20, 1969.]

JAMES E. PETRY, Plaintiff and Appellant, v. BOARD OF RETIREMENT OF THE LOS ANGELES COUNTY EMPLOYEES RETIREMENT ASSOCIATION et al., Defendants and Respondents.

Burton Marks for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Edward H. Gaylord, Assistant County Counsel, for Defendants and Respondents.

ROTH, P. J.—James E. Petry, a retired deputy sheriff of Los Angeles County, (appellant), appeals from a judgment

denying his petition to compel respondent Board of Retirement to vacate and set aside its determination that his disability was not the result of injuries incurred in the course of his employment. Appellant complains there is (1) no substantial evidence to support the retirement board's finding and (2) he insists that the retirement board was bound by the prior contrary finding of the Workmen's Compensation Appeals Board (then known as the Industrial Accident Commission). We find no merit in either contention.

In March 1961, appellant participated in a training exercise for jail escape procedures at Firestone sheriff station. During the course of the drill, an escape alarm sounded and appellant was required to jump up, grab a gun and run to the outside rear entrance of the station. He testified he twisted something while running. A few hours after the drill, appellant felt a "strain-like" pain, like a "charleyhorse," in the front of his left thigh extending laterally toward the outer margin of his left knee. The pain became more severe the next day. On the third day, the pain was so severe that his doctor sent him to St. Helen's Hospital in Bellflower. He remained for five days. Just before Christmas 1961, almost nine months after the simulated jail break in which he was injured, appellant developed pain in his right leg and a severe pain in his back. He had a history of a prior back injury. When he returned to work in June 1961, he was assigned less strenuous desk duties and worked only sporadically thereafter.

In September 1965, the Industrial Accident Commission found that the injury appellant sustained to his left thigh and back during the jail break drill arose out of and in the course of his employment. Appellant was awarded, among other things, $8,925 as permanent disability indemnity, and medical treatment for the remainder of his life.

In November 1965, appellant applied to the retirement board for service-connected disability retirement. The evidence before the hearing referee showed that since appellant had been injured in March 1961, he had been under the care of an attending physician and had also been examined by ten other physicians, including orthopedists, neurologists, neurosurgeons and a neuro-psychiatrist. The referee found there was conflicting medical opinion not only as to diagnosis, but whether the initial incident (in the jail break drill) could have resulted in a permanent disability, and whether appellant's symptoms (the back and right leg) which developed more than eight months after the initial incident were related thereto and whether appellant's symptoms at the time of the

hearing were due to a pre-existing psychoneurosis. The referee found that there was disagreement whether the pulled muscle in appellant's left leg could have caused such disability and that no definitive diagnosis was stated by any examining orthopedist. The referee concluded that the preponderance of medical opinion from a neurological point of view supported the primary cause of appellant's disability as emotional, or a psychoneurosis. The referee also concluded that appellant was disabled from performing his duties as a deputy but that there was insufficient evidence to support his claim for service-connected disability and recommended that appellant's application for such retirement benefits be denied.

On December 1, 1965, the retirement board, by letter, notified appellant that an order was made denying him retirement based on service-connected disability but determining that he was disabled for the performance of his duties and therefore retired him under an unmodified nonservice-connected disability retirement allowance effective January 1, 1966.

Appellant thereupon filed his petition to the superior court for a writ of mandate. The writ was denied.

The retirement board is a quasi-judicial body. In reviewing the evidence presented to the board, neither the superior court nor this court on appeal may weigh the evidence. (*Flaherty* v. *Board of Retirement*, 198 Cal.App. 2d 397, 408 [18 Cal.Rptr. 256]; *Rau* v. *Sacramento County Retirement Board*, 247 Cal.App.2d 234, 236 [55 Cal.Rptr. 296].) In an administrative mandamus proceeding, such as here, the courts must apply the substantive evidence rule in the same manner that the rule is applied by appellate courts in reviewing a trial court's decision. (*Beverly Hills etc. Sav. & Loan Assn.* v. *Superior Court*, 259 Cal.App.2d 306, 317 [66 Cal.Rptr. 183].) On such review by the courts to determine whether or not there is substantial evidence in support of the administrative decision "conflicts in the evidence must be resolved in favor of that decision and all legitimate and reasonable inferences must be indulged in its support." (*Marcucci* v. *Board of Equalization*, 138 Cal.App. 2d 605, at p. 608 [292 P.2d 264]; see also *Whoriskey* v. *City & County of San Francisco*, 213 Cal.App.2d 400, 408-409 [28 Cal.Rptr. 833]; *Oxman* v. *Department of Alcoholic Beverage Control*, 153 Cal.App.2d 740, 744 [315 P.2d 484].)

Application of these principles to the conflicting medical reports which were received, without objection, by the retirement board discloses that there was sufficient evidence

to sustain the board's determination. Dr. H. G. Crockett, a neurosurgical specialist, reported that there were no organic symptoms from which a positive organic diagnosis could be made and that there had not been "any industrial incident described which would permit the relating of the symptom-complex to industrial injury." Dr. Julius Yale Sher, an orthopedic surgery specialist, following a special orthopedic examination of the appellant, stated: "The subjective complaints impress this examiner as being sincere even though the diagnosis is obscure. [Appellant], according to his story first developed low back pains about December 1961, and the pains in his right leg first developed at that time. It is unlikely that an injury could produce symptoms that are not manifested until eight months after the injury. The symptoms referrable to his left leg would be attributed to the injury of March 29, 1961, would be evaluated as slight and limit him to no long standing or long walking." Dr. George N. Thompson, a psychiatrist, reported that, in his opinion, the appellant's symptoms were "largely due to his mental disorder, his psychoneurosis of anxiety state. . . . He is disabled partially only by reason of the psychoneurosis. . . . His disability is partial in that he is limited to sedentary type of occupation, that is desk work." Dr. Robert P. Sedgwick, a neurologist and psychiatrist, reported that: "In my opinion the [appellant] does not presently show any objective evidence of disease or injury involving his nervous system. He may initially have had a femoral neuritis due to trauma, postural strain or infection. I would agree with previous examiners that the prolongation of his symptomatology has probably been due to psychogenic findings. If one wishes to lable him 'psychoneurotic' because of his obvious tension and the history of rather prolonged invalidism following the injury, I have no objection. The factors in his personality contributing to his psychoneurosis, however, pre-existed and have nothing to do with his alleged injury. I, therefore, do not agree with Dr. Thompson's diagnosis of a 'post traumatic psychoneurosis, anxiety state.' "

The record before us contains an exhaustive, complete and detailed medical study of appellant's disability. No examiners found a definite reason for the cause of applicant's pain. No observable pathological reason for appellant's pain from his back injury has been documented. It is clear, therefore, that there was sufficient evidence before the board from which it could conclude, as it did, that appellant's disability was not service-connected.

■ The contention of the appellant that the prior award of the Industrial Accident Commission, which found that his injury was service connected, is res judicata and binding on the retirement board is without merit. Appellant so conceded in the trial court. The points and authorities in support of his petition for the writ, state "While it is admitted by petitioner herein that a decision of the Workmen's Compensation Appeals Board to the effect that an injury arises out of and in the course and scope of employment, it [*sic*] is not res adjudicata in the instant proceeding even though the Workmen's Compensation Appeals Board and the Retirement Board are representing the employer." In any event, it is settled that "a determination by the Industrial Accident Commission is not, however, binding upon the retirement board. . . . The retirement board had valid, independent rights with respect to determining whether petitioner suffered injury in the course and within the scope of his employment. . . . (*Flaherty* v. *Board of Retirement*, 198 Cal.App.2d 397 [18 Cal. Rptr. 256].)" (*Grant* v. *Board of Retirement*, 253 Cal.App. 2d 1020, 1021 [61 Cal.Rptr. 791].)

The judgment is affirmed.

Herndon, J., and Wright, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 16, 1969.