Opinion
 

 PUGLIA, P. J.
 

 Plaintiff Horace G. Hosford cross-appeals from an order of the superior court denying his petition for writ of mandamus to overturn a State Personnel Board decision which upheld his dismissal
 
 *305
 
 from the California Highway Patrol.
 
 [1]
 
 On appeal he contends the evidence does not support the board’s findings, dismissal was excessive punishment as a matter of law, and First Amendment free speech guarantees preclude his being penalized for certain of the instances of verbal misconduct alleged against him in the proceedings below.
 

 Facts
 

 On August 16, 1974, plaintiff, a nine-year member of the California Highway Patrol, was served with a statement of charges and notice of dismissal from that agency. The charged acts spanned a two-year period immediately preceding the service of the notice, and consisted of alleged violations of several subsections of Government Code section 19572. To the extent applicable to these proceedings, section 19572 provides: “Each of the following constitutes cause for discipline of an employee, or person whose name appears on any employment list: ...(c) Inefficiency, (d) Inexcusable neglect of duty, (e) Insubordination, (f) Dishonesty. . . . (j) Inexcusable absence without leave. . . . (o) Willful disobedience. . . . (q) Violation of this part or board rule. . . . (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment.”
 

 Hosford requested and was given a hearing before the State Personnel Board, which found against him on 13 of the 14 allegations. The board concluded his conduct constituted inefficiency, inexcusable neglect of duty, insubordination, and willful disobedience within the meaning of Government Code section 19572; it sustained the action dismissing him. His petition for rehearing was denied by the board and his petition for writ of mandamus was denied by the superior court (see fn. 1). This appeal ensued.
 

 
 *306
 

 First Amendment Claim
 

 We dispose at the outset of Hosford’s claim that his dismissal constitutes constitutionally prohibited punishment for the exercise of his First Amendment free speech rights. He bases this allegation on the fact that seven of the findings upon which the board sustained his dismissal concerned Hosford’s expressions of disdain and disrespect for his commanding officers and for the highway patrol. The remarks, spoken in the presence of both inferior and superior officers-, were all made in the context of the work relationship.
 

 It is well settled that First Amendment freedoms are not absolute. Their exercise may be regulated by “general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise,” when a proper governmental interest is served thereby.
 
 (Konigsberg
 
 v.
 
 State Bar
 
 (1961) 366 U.S. 36, 49-51 [6 L.Ed.2d 105, 115-117, 81 S.Ct. 997].) To the extent that it permits a public employee to be disciplined for insubordinate utterances to his superiors, Government Code section 19572, subdivision (e) arguably limits the unfettered exercise of free speech. However, we think the highway patrol’s interest in developing discipline,
 
 esprit de corps,
 
 and good morale among its members far outweighs any legitimate interest which Hosford could assert in undermining those efforts with unsolicited, disparaging remarks to or about his commanding officers in the course of duty. (See
 
 Kannisto
 
 y.
 
 City and County of San Francisco
 
 (9th Cir. 1976) 541 F.2d 841, cert, den., 430 U.S. 931 [51 L.Ed.2d 775, 97 S.Ct. 1552].) The First Amendment claim must fail.
 

 Scope of Review
 

 The decision under review of this court (and in the trial court below) was rendered after a full evidentiary hearing by the State Personnel Board, a statewide agency created by, and deriving its adjudicatory powers from the state Constitution. (Cal. Const., art. XXIV, §§ 2, 3.) Accordingly, this court’s inquiry on review is confined to an examination of the record to determine whether there is substantial evidence to support the board’s findings.
 
 (Barber
 
 v.
 
 State Personnel Bd., supra,
 
 18 Cal.3d at p. 404;
 
 Wilson
 
 v.
 
 State Personnel Bd.
 
 (1976) 58 Cal.App.3d 865, 869 [130 Cal.Rptr. 292];
 
 Marshall
 
 v.
 
 State Personnel Bd.
 
 (1973) 31 Cal.App.3d 904, 908 [107 Cal.Rptr. 738]; see
 
 Strumsky
 
 v.
 
 San Diego County Employees Retirement Assn.
 
 (1974) 11 Cal.3d 28, 34-36 [112 Cal.Rptr. 805, 520 P.2d 29].) In this examination we must view the
 
 *307
 
 evidence in the light most favorable to the board’s findings and indulge all reasonable inferences in support thereof.
 
 (Neely
 
 v.
 
 California State Personnel Bd.
 
 (1965) 237 CaI.App.2d 487, 489 [47 Cal.Rptr. 64].) Substantial evidence has been defined as “relevant evidence that a reasonable mind might accept as adequate to support a conclusion, . . .”
 
 (Gubser
 
 v.
 
 Department of Employment
 
 (1969) 271 Cal.App.2d 240, 245 [76 Cal.Rptr. 577].)
 

 With these principles in mind, we consider the issues.
 

 Findings of the Board
 

 [2]
 

 The first of the findings challenged on appeal concerns a verbal altercation which had taken place between the plaintiff and the assistant district attorney of Calaveras County some two years before the former was served with notice of his dismissal. The assistant district attorney testified that Hosford lost his temper when the prosecutor, after calling ahead to say he would be delayed, arrived between one and two hours late to a meeting scheduled with Officers Hosford and Lynn, one of Hosford’s subordinates, and pointed out some deficiencies in the investigation the two officers had performed. The meeting deteriorated into a shouting match which could be heard by members of the public in other parts of the building. Hosford accused the district attorney of ineptitude and bias against the highway patrol and called him names. The district attorney opined the incident, “couldn’t [have helped] but damage both offices,” since a close working relationship was essential in their small community. Officer Lynn testified the situation was extremely embarrassing and uncomfortable for him. Although plaintiff claimed that he had raised his voice in order to defend Officer Lynn’s work against unjust criticism, Lynn • testified he did not get that impression.
 

 
 *308
 
 Both Lynn and Lieutenant Garrison, Hosford’s immediate commanding officer, testified the incident could have had an adverse effect on the working relationship between the two offices, as well as on morale within their own department. Hosford’s commanding officer censured him for the incident.
 

 The board found that while the assistant district attorney should share the blame for the incident, the plaintiff’s “bad judgment and improper conduct” were not excused by that fact.
 

 Plaintiff challenges a finding concerning disparaging comments made by him in a room full of his subordinate officers about the new zone deputy commander whom most of the officers were to meet for the first time later that day. Four officers testified that after the commander’s imminent arrival was announced, Hosford made remarks to the effect the man was a “hatchet man looking for someone to shaft,” and “if he had a brain, he’d take it out and play with it.” The effect on departmental morale, according to the witnesses, was to create a feeling of mistrust toward the incoming commander; one witness testified that for the first several months of the new zone deputy commander’s tenure, the men kept expecting “some terrible calamity to befall” them. Hosford did not recall making the remarks, but stated he and the other officers did engage in occasional “squad-room talk,” making “mild complaints.” The other sergeant in the office testified on cross-examination that the remarks about the new commander could perhaps be so characterized. Hosford’s commanding officer reprimanded him for expressing negative feelings about higher-ups in front of his subordinate officers. The board found Hosford’s actions “were disrespectful,, and tended to undermine authority within the Highway Patrol.”
 

 Plaintiff complains of a finding, that he had developed a generally negative attitude about his work, and that since" mid-July 1973, he had frequently been absent therefrom and made numerous schedule changes for personal reasons. Testimony indicated that in January 1973, Hos-ford’s immediate commanding officer had written him a memorandum concerning his excessive use of sick leave, and its deleterious effect on Hosford’s effectiveness as a supervisor of the traffic officers.
 
 [3]
 
 His frequent absences continued, coupled with frequent schedule changes.
 
 [4]
 
 
 *309
 
 The results according to witnesses called by the highway patrol included a general slump in department morale; a feeling among subordinate officers that Hosford was abusing his sergeant’s privileges; increased use of sick leave by the other officers who came to regard their monthly day of sick leave as an extra day off a month; and the general disruption of departmental operations, since Hosford could not be counted on to show up for work when he was scheduled to be there. Several officers testified they were uncomfortable working with Hosford because of his constant grumblings about and criticism of their mutual superiors, and of the highway patrol in general. Plaintiff’s testimony about his absenteeism was to the effect that some of his frequent absences had been due to a work-related
 
 [5]
 
 and all the rest had either been approved by his commanding officer, or had not required prior approval. However, Hosford’s commanding officer testified that in July 1973, he had in writing informed both sergeants in his office that thereafter all scheduling would be done by him, and all changes would have to be approved by him. Although this was at one point contradicted by Hosford, at another point he acknowledged prior approval was required, but only for planned absences of more than three days.
 

 Plaintiff challenges a finding relating to a charge that he had filed a false report claiming he had worked on a day which in fact he took off without permission. The board accepted as true plaintiff’s testimony that he had simply misdated the form, but found “his failure to keep accurate records concerning his pay and official activity indicate^] a negligent or disinterested attitude toward his work.”
 

 Plaintiff also disputes the board’s finding with regard to an incident which transpired February 11, 1974. Evidence showed that Hosford had called the zone deputy commander and urgently requested a meeting with him that day. Upon their meeting, Hosford made a number of complaints and derogatory remarks about his immediate commanding officer, averring that the man was incompetent and untruthful, and that Hosford disliked him and had no respect for him. A principle of which all highway patrol members were aware and with which plaintiff was conversant was that of “chain of command,” specifically that any complaints an officer had must first be made to his immediate supervisor.
 

 
 *310
 
 If those two could not resolve the problem, then access could be had to the next person up the ladder. Hosford testified he had sought out the zone deputy commander because he felt it would be useless to talk to his immediate supervisor first. The board found: “The Highway Patrol is a paramilitary organization. Subordinates should not go over the head of their immediate supervisors except in matters of extreme importance. The [plaintiff’s] complaints were not that serious. His actions and statements indicated disinterest in his job, disrespect for his supervisor, and a lack of respect for the department as a whole.”
 

 The board also found Hosford had failed to turn in his highway patrol identification card when requested to do so. Evidence showed he was asked for the card at an August 8, 1974, meeting at which he was supposed to turn in all his state-owned, job-related property. At that time he told his supervisors that he had apparently lost the card in April or. May, but had not reported the loss as departmental policy regulations required him to do. Lieutenant Garrison testified the cards were probably the most important pieces of identification carried by patrol members and all officers were instructed as to the importance of promptly reporting a loss.' At the hearing Hosford testified he had subsequently found the card, but he then gave it to his attorney rather than returning it to the highway patrol.
 

 The rest of the findings challenged on appeal concern various instances of plaintiff’s insubordinate remarks to his immediate commanding officer. The first concerns a memorandum Hosford was directed to submit regarding his personal and job-related goals for 1974. The request was made before any punitive action was instigated against plaintiff. The supervisor testified Hosford had ample cause to know what, was expected, was antagonistic toward the idea and turned in a nonconforming document which among other things stated “any objective goals would have to be pure speculation.”
 

 One of the findings concerned a conversation between Hosford and his supervisor, in which the former told the latter, “One of us is going to have to go.” Hosford testified he had been quoting the zone deputy commander’s proposed solution to the two men’s personality clash, i.e., a transfer for either Hosford or his supervisor. The supervisor testified he understood the remark as a threat, not as a mere recitation of someone else’s thoughts or an expression of desire for a transfer. The board found, “Such a statement by the [plaintiff] was uncalled for and constituted insubordination.”
 

 
 *311
 
 Two findings concern insubordinate remarks made by Hosford after he was aware punitive action was going to be taken against him. Findings XI recites that, upon being told punitive action was going to be taken, the plaintiff told his commanding officer, “ ‘This is going to be bloody and you are going to be the loser as I have nothing to lose.’ ” He also stated that he would “ ‘go to any length to discredit the Area Commander [his immediate supervisor] including political pressure and the newspapers’ ” and that he “ ‘fought dirty’ ” and “ ‘played dirty’ ” and “ ‘would find some way to refute all charges.’ ” Finding XII attests to belligerent remarks made by Hosford in August 1974, when his immediate commanding officer called him at home and directed him. to come into the office the next day for an interview regarding the pending punitive action. Plaintiff does not appear to challenge the substance of these findings, but rather attempts to mitigate them by ascribing them to his allegedly overwrought emotional state.
 

 The final finding disputed by plaintiff concerns his conduct at the August 8, 1974, meeting with his immediate commanding officer and the zone deputy commander. Hosford’s attorney was also present. The testimony from all witnesses was that Hosford, when asked by his supervisor why he had failed to bring with him certain items he had been told to bring in and surrender to his erstwhile employer, replied, “ ‘All right, you go out and get them.’ ” Both of the plaintiff’s superior officers testified the words were said in a belligerent, insubordinate manner; plaintiff’s attorney said both men raised their voices; plaintiff himself testified he did not feel he was being insubordinate at the time.
 

 At the same meeting, the board found, plaintiff also accused his area commander of a felony.
 
 [6]
 
 While plaintiff endeavored at the hearing and in his brief on appeal to characterize this statement as an honest expression of a sincere belief, other testimony adduced at the hearing showed the alleged “felony” had been investigated and found meritless. Moreover, both of plaintiff’s superior officers testified the proper treatment of such a “sincere belief’ would have been privately to approach either the accused or his immediate supervisor about the matter rather than challenging his supervisor with it in front of a
 
 *312
 
 member of the public. The board found: “It is concluded that the [plaintiff’s] disrespect and insubordination at the August 8, 1974 meeting was not warranted and constituted a further reason for his dismissal. It is true that he knew that he was being terminated as a California Highway Patrolman at the time, but he was still a member of the Patrol and should have conducted himself accordingly.”
 

 Based on the foregoing findings, the board concluded dismissal was an appropriate sanction. We find, as did the court below, that the evidence detailed hereinabove is of the “substantial” nature required to uphold the board’s findings on appeal.
 
 (Barber
 
 v.
 
 State Personnel Bd., supra,
 
 18 Cal.3d at p. 404, and authorities cited therein;
 
 Gubser
 
 v.
 
 Department of Employment, supra,
 
 271 Cal.App.2d at p. 245.) We also find the conduct complained of may be appropriately characterized as either “inefficiency,” “inexcusable neglect of duty,” “insubordination,” or “willful disobedience,” within the contemplation of Government Code section 19572. We think it reasonable to conclude that, to the extent Hosford’s misbehavior impaired relations between himself and those with whom he worked, it necessarily rendered him less efficient in his job performance. To the extent he created a morale problem apiong the other men, his efficiency as one of the traffic officers’ two immediate .supervisors was certainly impaired. “Inefficiency” alone is a statutory basis for dismissal. (Gov. Code, § 19572, subd. (c); see
 
 Wilson
 
 v.
 
 State Personnel Bd., supra,
 
 58 Cal.App.3d 865.) Similarly, the board could well characterize plaintiff’s various verbal sparring matches with his immediate commanding officer as insubordination; his apparent disregard for his immediate commanding officer’s directives, as willful disobedience; and his chronic absenteeism as inexcusable neglect of duty.
 
 [7]
 
 (See
 
 Wilson
 
 v.
 
 State Personnel Bd., supra,
 
 58 Cal.App.3d at p. 880;
 
 Neely
 
 v.
 
 California State Personnel Bd.
 
 (1965) 237 Cal.App.2d 487, 492 [47 Cal.Rptr. 64];
 
 Peters
 
 v.
 
 Mitchell
 
 (1963) 222 Cal.App.2d 852, 862 [35 Cal.Rptr. 535];
 
 Coomes
 
 v.
 
 State Personnel Board
 
 (1963) 215 Cal.App.2d 770, 775 [30 Cal.Rptr. 639];
 
 Cook
 
 v.
 
 Civil Service Commission
 
 (1960) 178 Cal.App.2d 118, 133-134 [2 Cal.Rptr. 836].)
 

 Appropriateness of the Penalty Imposed
 

 Plaintiff’s final complaint is that even if all the charges against him are true, dismissal is an excessive penalty as a matter of law. Our
 
 *313
 
 review of this contention begins and ends with the question whether the board abused its discretion.
 

 “The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated. [Citations.] Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed. [Citation.]”
 
 (Barber
 
 v.
 
 State Personnel Bd., supra,
 
 18 Cal.3d at p. 404.)
 

 We think this contention is well answered by the testimony of Supervising Inspector Stokes, one of Lieutenant Garrison’s superior officers and the man who first recommended Hosford be dismissed rather than merely demoted and transferred: “It [an annual evaluation of plaintiff, written by the witness in March 1972, regarding his 1971 performance] says if his potential is to be realized that he must follow instructions and ... act in the frame of a supervisor. I think that’s the issue. I haven’t changed my opinion that he’s an intelligent and capable man. I don’t think his potential will ever be reached because he can’t follow directions.”
 

 The record is replete with testimony of plaintiff’s superior officers, peers, and subordinates, from which the board could well conclude that Hosford was a disruptive, demoralizing influence whose presence an efficiently operating, law enforcement organization such as the California Highway Patrol would be better without. There is ample evidence from which the trier of fact could also conclude, as did Inspector Stokes, that for almost two years preceding his dismissal, Hosford was given every opportunity to improve his behavior, but failed to do so. In these circumstances, no abuse of discretion has been shown.
 

 The judgment is affirmed.
 

 Regan, J., and Paras, J., concurred.
 

 A petition for a rehearing was denied October 31, 1977.
 

 Hosford filed two appeals before the Personnel Board. The first dealt with an adverse performance report, dated March 12, 1974, which was appealed to the board on the basis that it has “been used to abuse, harass, or discriminate against an employee.” [Cal.Admin. Code, tit. 2, § 340, subd. (d).) The board found in response to this appeal: “The [plaintiff] received an adverse performance report dated March 12, 1974. The report was signed by his immediate supervisor. Lieutenant Garrison and reviewed by Inspector Brown. There is no evidence that the report was made to abuse, harass, or discriminate against the [plaintiff]. The report was an honest statement of opinion by the two supervisors.” There is substantial evidence to support the finding; indeed, the only evidence adduced on the subject was that of Lieutenant Garrison, Hosford’s immediate commanding officer, who testified that the report constituted his sincere evaluation of Hosford’s performance in 1973. The rest of the board’s findings pertain to Hosford’s second appeal, the appeal from the notice of dismissal.
 

 [1]
 

 While upholding the board decision sustaining plaintiff’s dismissal, the superior court’s order gave retroactive application to
 
 Skelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], and awarded Hosford back pay. The board appealed on the question of whether or not
 
 Skelly
 
 did in fact apply retroactively, which issue the Supreme Court has since decided adversely to it in
 
 Barber
 
 v.
 
 State Personnel Bd.
 
 (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306]. After the
 
 Barber
 
 decision was rendered, the board’s request to have its appeal dismissed was granted by this court. All of the issues raised on this appeal are thus tendered by Hosford’s cross-appeal. Hosford does not contest that part of the superior court judgment applying retroactively the rule of
 
 Skellv
 
 v.
 
 State Personnel Bd., supra.
 
 In the interest of simplicity, Hosford is herein referred to as plaintiff rather than cross-appellant, his technically correct status.
 

 [3]
 

 The January 1973 memo concerned Hosford’s use of sick leave in 1971 and 1972: The totals of 55 hours and 80 hours for those years were “vastly disproportionate” to the amounts taken by other officers.
 

 [4]
 

 From January 1, 1973, through the end of February 1974, appellant made 55 schedule
 
 *309
 
 changes. The other sergeant in the office estimated he had changed his own scheduled hours 5 to 10 times in that same period.
 

 [5]
 

 In July 1973, Hosford allegedly injured his back in the course of lifting an injured motorist onto a stretcher. His workers’ compensation claim was still in litigation at the time of the personnel board hearing.
 

 [6]
 

 The alleged “felony” apparently involved a controversial arrest of a local citizen who had thereafter filed a lawsuit for false arrest and violation of his civil rights, claiming the Calaveras County District Attorney and the California Highway Patrol had conspired to arrest him at a time when it would be difficult for him to post bail. Subsequent investigation by the highway patrol and the Attorney General’s office concluded the claim was without merit.
 

 [7]
 

 We note that despite plaintiff’s attempt to claim he was being penalized for frequent absences which were legitimately due to his job-related injury, the record does not bear
 
 *313
 
 out his contention. Particularly illuminating is the fact that he was first reprimanded as early as January 1973, for undue absenteeism (in 1971 and 1972); yet he did not incur his alleged back injury until sometime in July of 1973.