[Civ. No. 30717. First Dist., Div. Two. Apr. 19, 1972.]

LOUIS B. PERADOTTO, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD et al., Defendants and Respondents.

## COUNSEL

Hermann E. Lorenz, Jr., for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Walter J. Wiesner, Deputy Attorney General, for Defendants and Respondents.

## OPINION

**TAYLOR, P. J.**—Louis B. Peradotto, a former employee of the State Department of Professional and Vocational Standards (hereafter Department)[1] appeals from a judgment denying his petition for a writ of mandamus seeking reinstatement and back pay after the State Personnel Board (hereafter Personnel Board) on May 8, 1969, affirmed his layoff by the Department on grounds of economy. He contends that: 1) the findings of the Personnel Board are not supported by substantial evidence; 2) his layoff was not made in good faith as it was not made based on economy, but retaliation by the former Department Director Shine; 3) his duties were reassigned to persons in exempt classifications, in violation of Government Code section 19531; and 4) the layoff deprived him of due process as he was deprived of the opportunity to subpoena Shine, a material witness; was not given proper notice, placed on a reemployment list, given an election to choose demotion pursuant to Government Code section 19535, and was deprived of his rights pursuant to Government Code sections 19452, 19455 and 19555.

Before turning to the facts, it must initially be noted that factual determinations of a statewide administrative agency which derives adjudicating power from the state Constitution, as does the Personnel Board, are not subject to reexamination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence (*Shepherd* v.

---

[1]The agency has since been retitled the Department of Consumer Affairs.

*State Personnel Board*, 48 Cal.2d 41, 46-47 [307 P.2d 4]; *Genser* v. *State Personnel Board,* 112 Cal.App.2d 77, 80 [245 P.2d 1090]).

In such a case, the function of the superior court is that of a reviewing court and not a trial court (*Neely* v. *California State Personnel Bd.,* 237 Cal.App.2d 487, 489 [47 Cal.Rptr. 64]). Thus, the order of the Personnel Board can only be set aside as arbitrary on the ground that it was found to be unsupported by substantial evidence (*Lorimore* v. *State Personnel Board,* 232 Cal.App.2d 183, 185-186 [42 Cal.Rptr. 640]). In making its determination, the trial court was obligated to confine itself to the record of the administrative proceeding and to refrain from exercising its independent judgment on the weight of the evidence (*Lorimore* v. *State Personnel Board, supra,* p. 186).

"In fact, the decisions generally have equated the review of administrative determination with the substantial evidence rule applicable to appellate review, i.e., the function of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which supports the conclusion reached, disregarding any evidence in the record contrary to the trier's finding. [Citations.]" (*Lorimore* v. *State Personnel Board, supra,* p. 186.)

The function of the appellate court is the same as that of the superior court, namely, to determine whether the findings of the Personnel Board are supported by substantial evidence (*Neely* v. *California State Personnel Bd., supra,* p. 489). This is true whether the trial court upholds the agency's decision (*Martin* v. *Alcoholic Bev. etc. Appeals Bd.,* 52 Cal.2d 238 [340 P.2d 1]) or orders it to be set aside (*Mundell* v. *Dept. Alcoholic Bev. Control,* 211 Cal.App.2d 231 [27 Cal.Rptr. 62]). In making such determination, the appellate court must also regard the evidence in the light most favorable to the findings made *by the Personnel Board,* not those made by the superior court, and draw all legitimate and reasonable inferences to support its conclusion (*Neely* v. *California State Personnel Bd., supra,* p. 489; *Hingsbergen* v. *State Personnel Bd.,* 240 Cal.App.2d 914, 916-917 [50 Cal.Rptr. 59]). Thus the main question before us is whether there is substantial evidence to support the findings and decision of the Personnel Board that appellant's layoff was made in good faith "in the interest of economy."[2]

The record of the hearing that served as the basis for the findings of the hearing officer indicates the following: In 1964, the legislative analyst recommended that the Department employ a professional person to prepare

---

[2]The Personnel Board adopted the proposed decision and findings of the hearing officer who so found.

statistical and other reports and data on a centralized basis for the 40-odd boards under its jurisdiction. Pursuant to this recommendation, the position was created and on February 1, 1965, appellant, an Economist and Statistician, transferred to it from his prior position in the Economic Development Agency.

Although appellant's position had the civil service classification of *Senior Business Development Specialist,* his working title in the Department was *Economist-Statistician.* His salary was $16,800. The position justification prepared in 1964 to support the creation of appellant's position stated the duties, as set forth in the footnote below.[3] In 1965 and 1966, appellant prepared a number of statistical reports, worked on conferences and public relations matters, and devised new statistical systems for the Department. At the end of 1967, appellant had a heart attack and was off duty on sick leave for over 100 days.

In February 1967, Shine was appointed director of the Department. In 1968, the Governor's Task Force on Governmental Efficiency and Economy (hereafter Task Force) made a survey of a number of state agencies, including the Department. Among the Task Force recommendations was the reorganization of staff functions in the Department and the elimination of 16 positions, including the one held by appellant.

Shine, the Deputy Director Reynolds, and other newly appointed incumbents of exempt positions, constituted a cabinet that met over a number of months to discuss the recommendations of the Task Force and other changes in the operation of the Department. The independent examination

---

[3]"1. Establish and supervise the installation and maintenance of reporting systems for each of the regulatory agencies of the Department.

"2. Gather, analyse and correlate within Department standards, economic business data developed by other governmental and private agencies.

"3. Plan and direct the publication of economic business data useful to the Boards and Commissions of the Department, industry, government, professions and educational institutions.

"4. Maintain liaison with professional and industry associations, economic and business research centers of colleges and universities, chambers of commerce, apprenticeship programs and other governmental agencies concerned with educating, training or using the services of persons licensed or regulated by the Department.

"5. Identify, analyse and classify specific areas for improvement based on economic/educational needs of the State.

"6. Establish reporting systems, analyse and classify data and develop criteria for the most effective and economic basis for regulatory programs.

"7. Establish criteria, prepare and analyse workload data for budget purposes.

"8. Confer with Department officials to determine data needed for policy formulation and operating purposes; develop methods of gathering, analysing and presenting such data as required.

"9. Supervise the preparation of the monthly report to the Governor, assist in developing press releases, make business and related surveys; prepare reports and review reports prepared by others."

of the structure of the Department indicated that appellant's position was not needed and was one that could be eliminated to reduce the overall costs of the Department. Shine indicated that he would not accept the Task Force recommendations unless he felt that they would not hamper the operation of the Department.

In Shine's view, the centralized statistics and reporting system that comprised items 1-6 and 8 of appellant's position were neither a necessary nor full-time function of the Department. The statistics were readily available from each of the individual boards or its executive officer and could be obtained whenever requested by the Legislature or other governmental agencies. The remaining duties of appellant's position (items 7 and 9, fn. 3 above) were reassigned to Reynolds and Hightower, Shine's administrative assistant, both holding exempt positions. Currently, the budget statistics (item 7) are compiled by the Department's fiscal officer.

On March 27, 1969, appellant received a letter from Shine stating that his position had been terminated "in the interest of economy" as of April 14, 1969. The letter further stated: "Unfortunately there are no other classes within our Department to which you have a right to demote. I have requested the State Personnel Board Recruitment Division to help us locate a vacancy in another department where you might be able to transfer or voluntarily demote."

The letter was accompanied by a certificate indicating that appellant's current performance was "Entirely Satisfactory." The letter continued: "Attached is a Form 631, Termination (Regular), which you should complete and return to me no later than April 5, 1969. I will send it to the Personnel Board so that your name will be placed on the reemployment lists promptly for referrals to any vacancies."

At the administrative hearing, appellant sought to show that his layoff was not made in good faith as Shine was determined to terminate him and some of the other employees who had opposed one of Shine's proposed reorganizations of the Department before the Personnel Board. The record indicates that the hearing officer heard the testimony of appellant and his witnesses on this issue, and also took judicial notice of the proceedings before the Personnel Board relating to its rejection of Shine's reorganization plan. Although there was conflicting evidence on this point, there was ample substantial evidence to support the hearing officer's finding of good faith. In 1964, appellant was employed in a newly created professional position in the Department, and was the only incumbent of that position. It was reasonable for the hearing officer to find that the director of the agency reasonably concluded that the Department could save some $16,800 a year by eliminating the major tasks·of appellant's position and

transferring the rest to certain exempt employees and the budget statistics to the fiscal officer. The fact that at the same time the Department also employed some persons in new positions (including a student intern who also worked on the budget) does not necessarily indicate "bad faith." The Department director has the discretion to determine the allocation of the functions within the Department.

Section 19530 of the Government Code specifically provides that "whenever it is advisable in the interests of economy to reduce the staff of any State agency," the appointing power may lay off a person serving in a position to be abolished. In interpreting the statute, the court stated in *Placer County Employees Assn.* v. *Board of Supervisors,* 233 Cal.App.2d 555, 559 [43 Cal.Rptr. 782]: "The courts have adopted the criterion of good faith to weigh the legality of actions abolishing civil service positions. The action will be upheld if taken in good faith, but invalidated if it is a subterfuge for the piecemeal dissolution of the civil service system [citation] or a sham method of ousting an unwanted employee. [Citations.] Reorganization of governmental offices promulgated in good faith and for reasons of efficiency or economy does not 'nullify the basic principle' of civil service even though it results in abolition of one or several civil service positions."

Appellant contends that his layoff was not in good faith as his duties were reassigned, contrary to Government Code section 19531. The statute provides: "The duties performed by any employee laid off may be assigned to any other employee or employees in the State agency holding positions in *appropriate classes.*" (Italics supplied.) While the duties of an employee who has been laid off may not be assigned to another civil service employee not entitled to perform those duties (*Winslow* v. *Bull,* 97 Cal.App. 516 [275 P. 974]), it is permissible to assign the duties of an abolished position to an exempt position (*Feider* v. *Hanna,* 172 Cal.App.2d 201, 205-208 [342 P.2d 344]). The uncontroverted evidence here indicated that after the director of the Department determined that most of appellant's former duties were no longer required, some of his other functions were reassigned to the deputy director and the director's administrative assistant, both exempt positions. This was proper under *Feider* v. *Hanna, supra.*

In examining the whole record, we conclude that there was substantial evidence to support the Personnel Board's decision that appellant's layoff was made in good faith in the interests of economy (*Stewart* v. *State Personnel Board,* 250 Cal.App.2d 445 [58 Cal.Rptr. 280]).

█ Appellant next contends that he was deprived of due process as he was not able to subpoena Shine as a "material witness." Appellant argues that since the beginning of his hearing was delayed until April 17, 1969, he

was unable to subpoena Shine, who permanently left state service as of April 15, 1969, to take a position in Washington, D. C. In view of the fact that appellant's termination letter was received on March 27, 1969, and his termination date set for April 14, 1969, the record does not support his contention of unnecessary delay in beginning his hearing on April 17, 1969. Appellant admits that prior to the time of his termination, he had heard that Shine would be out of state after April 15. The record, however, is devoid of any attempts on his part to take a deposition from Shine prior to his departure or afterwards. We conclude that appellant was not deprived of due process because Shine was not available as a witness.

Appellant contends that the letter of March 27, 1969, was not a sufficient notice as no factual basis for his layoff "in the interest of economy" was stated. Appellant has not cited any authority requiring that the specific facts be outlined in the notice. As discussed above, the director had discretion to make the layoff pursuant to Government Code section 19530, and substantial evidence indicates that there was good faith.

Appellant further argues that he was deprived of due process as contrary to the third paragraph of Shine's letter of March 27, 1969, his Form 631 was not forwarded to the Personnel Board and he was not placed on a reemployment list between May 8 and November 26, 1969. This question, however, was not before the hearing officer or the Personnel Board and, therefore, is not properly a part of this appeal. We need not consider the appendices submitted showing the correspondence between appellant and the Personnel Board after the rendition of the Personnel Board's decision herein.

Appellant argues that he was deprived of due process as to his right to demote pursuant to Government Code section 19535. He alludes to Shine's letter of March 27, 1969, stating that there were no other classes within the Department to which he had a right to demote. He claims that he was entitled to demote to one of the following positions: Associate Budget Analyst, Assistant Budget Analyst, Business Service Training Officer II, Training Assistant.

Government Code section 19535 provides: "In lieu of being laid off an employee may elect demotion to: (a) any class with substantially the same or a lower maximum salary *in which he had served under permanent or probationary status,* or (b) *a class in the same line of work* as the class of layoff, but of lesser responsibility, if such a class is designated by the board. Whenever such a demotion requires a layoff in the elected class, the seniority score for the demoted employee shall be recomputed in that class. The appointing power shall inform the employee in the notice of layoff of the classes to which he has the right to demote. To be considered for demotion

in lieu of layoff an employee must notify his appointing power in writing of his election not later than five calendar days after receiving notice of layoff.

"Demotions in lieu of layoff, and layoffs resulting therefrom, shall be governed by the provisions of this article and shall be made within the subdivisions approved by the board for this purpose. Such subdivisions need not be the same as those used to determine the area of layoff under Section 19532." (Italics supplied.)

The statute sets forth the principle enunciated in *Stockton* v. *Department of Employment*, 25 Cal.2d 264 [153 P.2d 741], that the abolition of a position in the interests of economy (Gov. Code, § 19530) does not result in the layoff of the employee holding the position. On the basis of seniority points (determined as set forth in Gov. Code, §§ 19533, 19533.1, 19533.2, and 19534), he is entitled to "bump" employees with lower seniority by demoting *to either* a lower class *in which he had served* or a *class in the same line of work* of lower responsibility, *if such a class is designated by the Personnel Board.*

The record indicates that appellant had not met either of these conditions. Appellant had not served in any class with a lower salary under a permanent or probationary appointment in the Department. Furthermore, the hearing officer, after reviewing the Personnel Board specifications,[4] concluded that since there was no particular relationship between appellant's class and any of the four to which he claimed a right to demote, those four were not "in the same line of work" as the class of Senior Business Development Specialist within the meaning of Government Code section 19535.

Appellant contends that the above finding and the implied restriction of his right to demote only to positions within the Department were arbitrary and contrary to section 19535. We cannot agree. A comparison of the Personnel Board specifications for the four positions to which appellant claimed a right to demote and the nine tasks set forth by the position justification for the position of Senior Business Development Specialist supports the hearing officer's conclusion. Appellant's contention that his right to demotion extends to a class in the same line of work outside the Department is totally unreasonable and not supported by any authority.

---

[4]"The work of a Senior Business Development Specialist involves 'encouraging the location and development of new businesses in the State.' The Budget Analyst positions both involve 'technical budget analysis work in administering the State budgetary program.' The Business Service Officer II involves supervision of the procurement and maintenance of space, supplies, and equipment. The Training Assistant position involved 'planning, conducting and organizing training programs.' "

■   Finally, appellant maintains that he was deprived of due process as he was deprived of his rights to retraining pursuant to Government Code sections 19452,[5] 19455 and 19555. There is no merit to this contention. Section 19452 at the time here applicable, by its express terms, applied only to automation or technological changes. The more comprehensive language relating to "other management-initiated changes" was added by Statutes of 1969, chapter 1199, section 1, and became effective on November 10, 1969, long after the conclusion of the instant administrative proceedings. Although Government Code section 19455 relating to the rehabilitation and retraining of disabled state employees was added by Statutes of 1968, chapter 1422, section 1, and became effective prior to the administrative proceedings in the instant case, appellant never argued below that he was sufficiently "disabled" as a result of his heart attack to qualify for any of the programs under the statute. Government Code section 19555 relating to assistance in locating, preparing for and placement in other civil service positions where tasks assigned are eliminated or substantially changed, was added by Statutes of 1969, chapter 1199, section 2, and became effective on November 10, 1969.

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 15, 1972.

---

[5]At the time here pertinent, Government Code section 19452 (added by Stats. 1965, ch. 1346) provided: "The board shall devise plans for and cooperate with appointing powers and other supervising officials in the administration of training programs for employees whose positions have been or are about to be eliminated by automation or technological changes to prepare and qualify such employees for other positions in the state civil service."